## S94A1721. TRAMMEL v. THE STATE.

(454 SE2d 501)

HUNSTEIN, Justice.

Walter Lavan Trammel was convicted of the murder of Joe Lewis Cameron and sentenced to life in prison. He appeals from that conviction and we affirm.[1]

1. Appellant enumerates as error the trial court's denial of his motion for a new trial based on its finding that his trial counsel was not ineffective for failing to make a *Batson* motion after the State used fifty percent of its peremptory strikes to remove two black jurors.[2] During the hearing on appellant's new trial motion, his trial counsel testified that, although he would have preferred to have had on the jury the two black jurors struck by the State, he was nonetheless satisfied with the jury which was selected and sworn and therefor did not make a *Batson* objection. The trial court concluded that trial counsel's decision not to assert a *Batson* challenge was not tantamount to ineffectiveness, but rather was a matter of trial strategy. Notwithstanding that determination, as a prophylactic measure, the trial court, sua sponte, conducted a *Batson* hearing at which evidence was adduced as to the prosecutor's reasons for striking two black jurors. The court concluded that because those reasons were race-neutral, no *Batson* violation had occurred and that appellant's motion should be denied.

In order to establish that there has been ineffective assistance of counsel, appellant must have shown not only that his counsel's performance was deficient, but also that the deficiency resulted in prejudice to him. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988). However, *Strickland* does not require that we inquire first into the alleged deficiency in counsel's performance, or even address the issue at all, if we find that no prejudice has been shown, that is, that there is no reasonable probability that the outcome would have been different had counsel made a timely *Batson* motion at trial. *Strickland*, 466 U. S. at 697; *Lajara v. State*, 263 Ga. 438 (3) (435 SE2d 600) (1993). Having determined, for the sake of

---

[1] The crime was committed early on the morning of April 21, 1992. Appellant was indicted by the Troup County Grand Jury on February 2, 1993. Following a jury trial, the verdict was returned on February 26, 1993. Appellant's motion for a new trial was filed March 25, 1993, amended August 24, 1993 and denied February 25, 1994. Appellant's notice of appeal was filed on March 22, 1994. His appeal was docketed in this Court on August 5, 1994 and submitted for decision on September 26, 1994.

[2] During the new trial motion hearing, the parties stipulated that the venire from which the jury was selected was composed of twenty-two whites and eight blacks. The State exercised four strikes, of which two were against blacks. The defense exercised eight strikes, of which one was against a black. The seated jury was composed of eleven whites and one black.

argument, that a prima facie case existed, the court heard the prosecutor's explanations and determined that they were race-neutral. Appellant has not shown, nor does the record in any way indicate, that the conclusion of the trial court would have been different had the *Batson* hearing occurred subsequent to a timely motion by appellant's counsel rather than on the court's own initiative during the hearing on appellant's motion for a new trial. Accordingly, appellant's ineffective assistance claim is without merit.

2. Appellant further contends, however, that the trial court erred in accepting as race-neutral the State's explanations for striking two black jurors and therefore denying his motion. The prosecutor testified that she struck juror no. 5 because he was visually impaired to the point of requiring a cane to make his way and she was concerned that he would be unable to see, adequately, the diagrams to be used by State's witnesses to point out the locations and movements of the victim and the defendant, all of which the prosecutor considered very important to the State's case. The prosecutor then explained that she struck juror no. 12 because the juror had the same last name, Gilliam, as at least 13 people prosecuted by the district attorney's office since 1987 and came from the same small town, West Point, as did the majority of those 13 persons. In response to the trial court's inquiry whether the prosecutor was concerned that there might be some connection between the juror and those prosecuted, the prosecutor affirmed that, given the small size of the town, she was concerned there might be some relationship and possible ill-feeling on the part of the juror toward the district attorney's office.

Under *Batson*, unless it is shown to be clearly erroneous, a trial court's finding must be affirmed. *Smith v. State*, 264 Ga. 449 (1) (448 SE2d 179) (1994). The trial court, having had the opportunity to observe juror no. 5, could reasonably conclude as it did that the explanation offered by the State for striking him was race-neutral and without discriminatory intent. The explanation offered for the strike of juror no. 12 is more troubling, particularly in light of the fact that the juror was not asked, on voir dire, whether she was related to any of the prosecuted Gilliams. However, as we have stated heretofore,

> [a] reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike.

*Hall v. State*, 261 Ga. 778, 780 (2) (a) (415 SE2d 158) (1991). Here, unlike *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993), wherein the prosecutor conceded that he struck two jurors because they were *black* citizens of a small community, there was no showing that the prosecutor's decision to strike was motivated by a "stereotypical be-

lief that all black [persons named Gilliam] were biased against the [district attorney's office]." (Footnote omitted.) *Congdon*, supra at 685.[3]

> [T]he trial [court] chose to believe the prosecutor's race-neutral explanation for striking the two jurors in question, rejecting [appellant's] assertion that the reasons were pretextual. [Under] *Batson*, . . . the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal.

*Hernandez v. New York*, 500 U. S. 352, 364 (111 SC 1859, 114 LE2d 395) (1991); see *Smith*, supra at 451. The trial court was authorized to conclude that the prosecutor's explanations were "sufficiently race neutral to overcome [appellant's] accusation of racial discrimination in the exercise of peremptory challenges. [Cit.]" *Hill v. State*, 263 Ga. 37, 43 (9) (427 SE2d 770) (1993).

3. The evidence adduced at trial showed that upon his arrival at his girl friend's apartment, appellant shot and killed her former husband who had been visiting his son there. Notwithstanding that appellant has not challenged the sufficiency of the evidence, we nonetheless conclude that when viewed in a light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crime charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 1995.

*Michael E. Garner*, for appellant.

*Peter J. Skandalakis, District Attorney, Dennis T. Blackmon, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General*, for appellee.

---

[3] During the hearing on appellant's motion for a new trial, but prior to the court's solicitation of the State's explanations, the prosecutor testified that her notes did not reveal whether Ms. Gilliam was black or white, but that she was struck because of her last name.