S07A1553. STANLEY v. THE STATE.
(656 SE2d 806)

HINES, Justice.

Serlester Stanley appeals the denial of his motion for new trial and his convictions for malice murder and possession of a knife during the commission of a felony in connection with the fatal stabbing of Therlin Gates. He challenges the sufficiency of the evidence with regard to the possession charge and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes occurred on May 10, 2003. On May 11, 2004, a Fulton County grand jury indicted Serlester Stanley for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and possession of a knife during the commission of the felony of aggravated assault; the indictment too charged E. J. Taylor with aggravated assault and possession of a knife during the commission of the felony of aggravated assault, also in

The evidence construed in favor of the verdicts showed that at about 11:00 p.m. on May 10, 2003, Serlester Stanley, his nephew, E.J. Taylor, Therlin Gates, and several other people were drinking and "hanging out" at an address on Welch Street in Atlanta. Taylor and Gates exchanged words, hit each other, and began to scuffle on the ground. Gates then got up and walked towards Stanley's truck. Taylor followed Gates to the truck; Taylor had a knife in his hand. Taylor cut Gates once with his knife, but he did not cut him on the chest. Gates retaliated by hitting Taylor in the head with a brick. Then, Stanley walked over to Gates and they exchanged words. Stanley pulled a knife from his pocket and stabbed Gates in the chest. Gates asked Stanley, "Why did you do that to me man?" Gates then "wobbled" and fell to the ground. A witness saw a "big old hole" in Gates's chest and blood on the knife Stanley was holding. Gates died from the stab wound to his chest, which pierced the right ventricle of his heart; he also sustained superficial cuts to his right eye, the top of his right shoulder, and his neck.

Stanley told police at the scene that his nephew and the victim had gotten into a fight, that he had gotten involved, and that he "stuck the victim." He later gave a videotaped statement to police, which was admitted into evidence at trial, in which he described his role in the deadly assault on Gates, and repeatedly made stabbing gestures in his recounting of the event. A longtime friend of Stanley, Taylor, and Gates testified that prior to the murder, Stanley had twice pulled a knife on Gates in the friend's living room; the second time was approximately two and a half months before the murder. Eyewitness Byrd testified that Stanley stabbed Gates in the chest. Taylor testified for the State that Stanley struck the fatal blow.

1. Stanley contends that the evidence about the length of his knife was insufficient as a matter of law to support a conviction for possession of a knife during the commission of a felony pursuant to OCGA § 16-11-106 (b).[2] He urges that he was entitled to an acquittal on the charge because the prosecution introduced no evidence of blade length. But, that is not the case.

---

connection with the stabbing of Therlin Gates. Stanley was tried before a jury May 2-4, 2006, and found guilty of all charges against him. On May 5, 2006, he was sentenced to life in prison for malice murder and a consecutive term of five years in prison for possession of a knife during the commission of a felony. The felony murder stood vacated by operation of law and the aggravated assault merged with the malice murder for the purpose of sentencing. A motion for new trial was filed on May 24, 2006, and an amendment to the motion for new trial was filed on January 23, 2007. The motion for new trial was denied on February 23, 2007. A notice of appeal was filed on March 22, 2007, and the case was docketed in this Court on June 28, 2007. The appeal was argued orally on October 10, 2007.

[2] OCGA § 16-11-106 (b) provides in pertinent part that in committing the applicable crime, the "person shall have on or within arm's reach of his or her person . . . a knife having a blade of three or more inches in length. . . ."

The evidence at trial included testimony from the resident of the property where the stabbing occurred that he knew Stanley to carry a knife "about 5 inches or something like that," and the witness further characterized the knife as having a long blade. Taylor's testimony also shed light on the magnitude of the weapon wielded by Stanley in the fatal attack on Gates. Taylor testified that he was certain that he had not inflicted Gates's fatal chest wound because he "had a little 3-inch knife." From this, it could be inferred that, in contrast, the knife blade that Stanley used to stab Gates was longer than three inches. See *Respres v. State*, 244 Ga. App. 689, 690 (1) (536 SE2d 586) (2000). In addition to this testimony, there was evidence of the nature and extent of the victim's fatal wound, including expert testimony that the wound was at least 2 1/2 inches in depth, and eyewitness testimony of the gaping nature of such wound. The jury was authorized to find that Stanley used a knife that had a blade of three or more inches in length to stab Gates in the chest. The evidence was sufficient to enable a rational trier of fact to find Stanley guilty beyond a reasonable doubt not only of possession of a knife during the commission of a felony, but also of the malice murder of Therlin Gates. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Stanley also contends that his trial counsel failed to provide effective assistance in several respects. But, to prevail on his claim of ineffectiveness, Stanley has the burden to show that counsel's performance was deficient, and that such deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

> To meet the first prong of the required test, the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of her trial would have been different. We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Taylor v. State*, 282 Ga. 693, 695 (653 SE2d 477) (2007).

(a) Stanley contends that trial counsel was ineffective for failing to file a motion to suppress his videotaped statement to police, as his statement was taken despite his request for counsel and without a valid waiver of his *Miranda*[3] rights due to his inebriation. However, the failure to file a motion to suppress does not constitute per se ineffective assistance of counsel, and inasmuch as Stanley is alleging that ineffectiveness was demonstrated by trial counsel's failure to move for suppression of his statement, Stanley must make a "strong showing" that the evidence would have been suppressed had a motion to suppress been filed. *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994). And this he cannot do.

The record, including Stanley's videotaped statement to police, shows that a detective read Stanley his *Miranda* rights, and that at the conclusion thereof, Stanley stated that he did not want to sign anything "to incriminate" himself. The detective then explained that without execution of the waiver, Stanley could not discuss what happened. Stanley replied "Yeah," and then stated, "Number Five. That I request an attorney." The detective then attempted to clarify whether Stanley wanted an attorney before he was asked any questions, and Stanley merely responded that he had no problem with telling the truth and then related his version of the fatal encounter.[4]

A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. . . . [However,] [i]n order for a suspect to properly invoke his right to counsel during a custodial interrogation,

---

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] The exchange between Stanley and the detective immediately prior to Stanley's recounting of the stabbing was the following:

STANLEY: Number five. That I request an attorney.
DETECTIVE: Okay, so you want an attorney before we ask you any questions?
STANLEY: I ain't got no problem with it because I'm telling the truth.
DETECTIVE: Well, that's up to you, sir.
STANLEY: You know, because, you know ain't – ain't nothing – ain't, but I don't want to sign my – my life away, you know? You understand that?
DETECTIVE: Oh, I understand.
STANLEY: You know? You know, I can read.
DETECTIVE: All right, well are you telling me that you don't want to talk unless there's any attorney here?
STANLEY: I ain't got – I ain't got nothing – I ain't got nothing to hide. I ain't got nothing to hide. You know, like I said, you know, like when was – I didn't do it.
DETECTIVE: You didn't do what?
STANLEY: You know –
DETECTIVE: Stanley, Stanley –
STANLEY: I was trying to stop a fight.
DETECTIVE: Okay.

he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

(Citations and punctuation omitted.) *McDougal v. State*, 277 Ga. 493, 498-499 (1) (B) (591 SE2d 788) (2004). See also *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981).

Stanley's right to counsel was not violated during the videotaped interview. In the context of the exchange with the detective during the reading of the *Miranda* rights, Stanley's statement, "Number Five. That I request an attorney" is as credibly interpreted as a waiver of the right to counsel as it is deemed to be a request for counsel; thus, it is properly viewed as ambiguous, and the detective's attempt at clarification was warranted. See *Roebuck v. State*, 276 Ga. 136, 138 (1), n. 6 (575 SE2d 895) (2003). Even assuming that Stanley sufficiently articulated his desire to have counsel present, it is plain that he then waived that right by initiating discussion with police without any further prompting or interrogation by them. *McDougal v. State*, supra at 498-499 (1) (B).

As to the claim that Stanley could not validly waive his *Miranda* rights because he was inebriated, the intoxication of the accused does not automatically invalidate his or her waiver of *Miranda* rights or render inadmissible the accused's spontaneous statements to the police. *Miller v. State*, 263 Ga. 723, 724 (3) (438 SE2d 81) (1994). The videotape of Stanley's interview supports the conclusion that he was not prevented by any intoxication from knowingly waiving his rights and giving a voluntary statement. *Horton v. State*, 258 Ga. 489, 490 (3) (371 SE2d 384) (1988).

(b) Stanley next contends that his trial counsel was ineffective for failing to move to strike certain testimony of eyewitness Byrd which Stanley characterizes as damaging, non-responsive, and going directly to the contested issue of cause of death, resulting in speculative lay testimony about the cause of death.[5]

Byrd was certainly authorized to testify about his observations of the attack on the victim. As to Byrd's comment about the cause of the victim's death, it is plain that Byrd was not testifying as an expert witness on that issue or any other, and that his statement was merely gratuitous. Even assuming arguendo that it was deficient for counsel to fail to object to the statement, Stanley must demonstrate that such deficiency prejudiced his defense so that the result at trial would have

---

[5] Byrd testified, "Like I said, I saw [Stanley] walk up to [Gates] and stick him in the chest. That's what I really believe killed him."

been different. *Taylor v. State*, supra. And this Stanley cannot do in light of the overwhelming evidence that he inflicted the stab wound to the victim's chest and the uncontradicted evidence that the victim died as the result of that wound. See *Belmar v. State*, 279 Ga. 795, 800 (3) (621 SE2d 441) (2005).

(c) Stanley further asserts that his trial counsel failed to provide effective assistance because during cross-examination of State's witness Bell, counsel introduced into evidence Bell's statement to police describing the fatal altercation, which statement Stanley maintains had minimal impeachment value at the expense of bolstering the State's case. But, this complaint too is unavailing.

Both of Stanley's trial attorneys testified at the motion for new trial hearing. The attorney who assisted lead defense counsel, and who introduced into evidence the statement at issue, testified that it was his strategy at the time to put Bell's statement into evidence so that the jury could see the inconsistencies between it and Bell's testimony in court, and that he exercised his professional judgment in deeming it appropriate to use the statement in that manner for impeachment.

In general, matters of reasonable trial strategy and tactics will not amount to ineffective assistance of counsel. *Smith v. State*, 282 Ga. 388, 392 (7) (651 SE2d 28) (2007). And, contrary to Stanley's urging, the decision to admit Bell's pretrial statement into evidence cannot be deemed to be unreasonable as the portion of the statement describing Stanley as the individual who stabbed Gates in the chest merely echoed Bell's trial testimony. See *Stokes v. State*, 281 Ga. 825, 833 (8) (b) (642 SE2d 82) (2007). "The mere fact that present counsel would have pursued a different strategy does not render trial counsel's strategy unreasonable." Id.

(d) Finally, for the reasons already outlined in Divisions 2 (a), (b), and (c), there is no merit to Stanley's claim that the adverse outcome of his case is the result of the effects of combined professional errors by his trial counsel. See *Schofield v. Holsey*, 281 Ga. 809, 811, n. 1 (642 SE2d 56) (2007).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 28, 2008.

*Stephen R. Scarborough*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.