## S09A0663. PIERCE v. THE STATE.

(686 SE2d 656)

NAHMIAS, Justice.

In 2005, a Cobb County jury convicted Baretta Harold Pierce of felony murder and other crimes arising out of the shaking death of her girlfriend's four-month-old baby, Donte West (Donte). The trial court denied Pierce's motion for new trial, and Pierce appealed. For the reasons that follow, we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. Pierce met Candis West, Donte's mother, in early 2003 when West was three months pregnant with Donte. Pierce and West became romantically involved, and a month later, Pierce moved in with West. Pierce was abusive, both verbally and physically, throughout West's pregnancy, and she actively worked to isolate West from her family.

Donte was born six weeks premature, weighing just three pounds, 19 ounces. Pierce and West were eventually able to take Donte home from the hospital, and Pierce's domineering, abusive treatment of West was thereafter visited on Donte as well. Pierce would yell and curse at the infant for crying, pick him up by his pajama collar, spank him on the leg, and shake him. Pierce prevented West from holding or nurturing her infant son, saying that it would spoil him and turn him into a "punk." The abuse continued for several months.

---

[1] Pierce committed her crimes on January 24, 2004. The Cobb County grand jury indicted her on October 7, 2004. At the conclusion of a jury trial conducted on October 19-25, 2005, the jury acquitted Pierce of malice murder but convicted her of two counts of felony murder, two counts of aggravated battery, and one count of cruelty to a child in the first degree. The second felony murder conviction, one of the aggravated battery convictions, and the cruelty to a child in the first degree conviction merged into the first felony murder conviction. The trial court sentenced Pierce on October 25, 2005, to life in prison for felony murder plus 15 years consecutive for aggravated battery. Pierce filed a motion for new trial on October 28, 2005, and a supplemental motion on March 8, 2007. Following a hearing on March 27, 2008, the trial court denied the motion on April 10, 2008. Pierce filed a notice of appeal to the Court of Appeals on May 2, 2008, and an amended notice of appeal on August 26, 2008. The Court of Appeals transferred the appeal to this Court on January 6, 2009. The case was docketed in this Court on January 7, 2009, and submitted for decision on the briefs on March 2, 2009.

On the morning of January 24, 2004, Donte was especially fussy, cried much, and refused to eat. Irritated by his crying, Pierce demanded that West "shut him up, put his pacifier in his mouth, try to feed him." West readied Donte for daycare at Carla Echols's apartment, and Pierce drove West to work before heading to Echols's apartment to drop off Donte.

Echols saw Pierce drive into the apartment complex's parking lot. Five or six minutes later, Pierce called Echols and told her that Donte would not wake up. When Echols arrived at the car, Pierce was removing Donte from his car seat. According to Echols, Donte was "just limp" and "gasping for air." Pierce did not try CPR or ask Echols to call 911. Instead, she worried that the Department of Family and Children Services would be notified. Donte was nauseous, unresponsive, and slipping in and out of consciousness, and he eventually became comatose. Echols's daughter called 911, and Donte was rushed to Scottish Rite Hospital. Donte suffered several seizures in the ambulance.

At the hospital, the medical staff found that Donte had suffered severe brain damage. There was bleeding in his head, around the brain, and in all three layers of his retina. He also had extensive and severe optic nerve edema, or swelling. Both his legs were broken. Donte died two-and-a-half weeks later when life support was withdrawn. He was just four months old. After conducting an autopsy, the medical examiner concluded that Donte died from hypoxic-ischemic encephalopathy caused by violent shaking, or shaken baby syndrome.

Viewed in the light most favorable to the verdict, the evidence presented at trial was sufficient to authorize a rational jury to find Pierce guilty beyond a reasonable doubt of the crimes for which she was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Pierce contends that her convictions must be reversed because the State suppressed color photos of Donte's autopsy, which she claims were exculpatory evidence under *Brady v. Maryland*, 373 U. S. 83, 87 (83 SC 1194, 10 LE2d 215) (1963). Pierce complains that the State turned over only black and white copies, not color copies, which prevented the defense's consulting forensic pathologist from being able to determine the time frames in which Donte's various injuries were sustained. Pierce claims that had the color copies been made available to her, her consultant would have testified at trial and made a compelling argument that Donte's injuries occurred in the hospital and not while he was with Pierce.

To prevail on a *Brady* claim, a defendant must show that: (1) the State possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not obtain it through

reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different. *Blackshear v. State*, 285 Ga. 619, 622 (680 SE2d 850) (2009). However, Pierce did not raise a *Brady* claim at trial or in her motion for new trial, and she has therefore waived the right to raise this objection on appeal. *Jones v. State*, 258 Ga. 249, 249 (368 SE2d 313) (1988).

Even if we overlooked Pierce's waiver, the claim fails on the merits. First, Pierce did not show that the State suppressed the autopsy photos. Instead, the discovery certificate attached to the State's supplemental disclosure stated clearly that *copies* of the autopsy photos were being provided to the defense and that the *original* autopsy photos were available for viewing. Pierce's failure to examine the originals made available to her cannot be held against the State.

Second, even if the color versions of the photos had been suppressed, Pierce has failed to show that there is a reasonable probability that their disclosure to the defense would have altered the outcome of her trial — a conclusion also dispositive of her related ineffective assistance of counsel claim discussed below. Pierce argues that: (1) if her consulting forensic pathologist had been able to review the color photos, he would have been better able to determine when the infant's various injuries were inflicted; (2) trial counsel would have then placed the consultant on the stand at trial, and he would have opined to a reasonable degree of medical certainty that the injuries that led to Donte's death were inflicted at a time when the baby was not in Pierce's care; and (3) this opinion testimony would have been so compelling that it would have convinced at least one juror to acquit. The recitation of Pierce's line of argument reveals its entirely speculative nature.

Moreover, the affidavit from Pierce's consulting forensic pathologist is, to say the least, unconvincing. The affiant's qualifications to offer expert testimony in a case of this type are dubious.[2] The opinions he offers in his affidavit are inconclusive. The most he is willing to commit to is that "the injury more probably occurred on January 21, 2004," not three days later as the prosecution contended

---

[2] The defense's consultant, who styles himself "Robert Goldberg M.D., J.D." and claims to be an expert forensic pathologist, is not, in fact, licensed to practice medicine in the United States, nor, as far as we can tell from the record, is he licensed to practice law in the United States. He did not complete an accredited pathology program, which takes four years, and he does not have the training necessary to become a forensic pathologist. Nevertheless, because he is referred to as a "forensic pathologist" in the record and Pierce's brief on appeal, we refer to him in that manner throughout this opinion.

at trial; that it is "conceivable" that Donte could have been hurt by his mother because she was under great stress; and that the chronology from the hospital "points to the baby-sitter as the perpetrator." Furthermore, the time line recited in the affidavit is contradicted by the time line of events as established by the record evidence, and at some points in the affidavit, the affiant appears to have confused Pierce and her girlfriend, Donte's mother. Finally, the affidavit does not rule out the possibility that Pierce inflicted Donte's fatal injuries, as the jury found.

In fact, the lead prosecutor submitted an affidavit in connection with the motion for new trial stating that he had personally spoken to the defense's consulting forensic pathologist before Pierce's trial to determine the subject matter of his potential testimony. According to the lead prosecutor, in response, the consultant "vehemently insisted" that he would not be called by Pierce to testify at trial, he "laughed a little bit," and he then "stated firmly that he actually agreed with the State's doctors' reports and the theory of our case, i.e., that per the timeline of events and the medical evidence, the Defendant was the person that committed the act that killed D[o]nte West." In sum, given the speculative nature of Pierce's argument for materiality and the weakness of the evidence she offered in support of it, in contrast to the strength of the evidence against her, she failed to demonstrate that there is a reasonable probability that obtaining the color copies of the autopsy photos would have changed the outcome of her trial.

3. Pierce claims that her convictions must be reversed because the trial court erred in allowing into evidence four supposedly inflammatory, prejudicial, and duplicative photos of Donte in the hospital. She asserts that because the baby's injuries were all internal, the photos could not assist the jury by showing the location and nature of his injuries. Pierce's argument is based on a false premise. The fact that Donte did *not* have external injuries bolstered the State's argument that he died from shaken baby syndrome rather than some other cause. Accordingly, the photos could assist the jury in determining the nature and location of Donte's injuries, and the trial court did not abuse its discretion in admitting them. See *Bradley v. State*, 281 Ga. 173, 174 (637 SE2d 19) (2006).

4. Pierce argues that the trial court erred in denying her claim of ineffective assistance of trial counsel. Ineffective assistance of counsel claims are generally evaluated under the two-part test established in *Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984). To prevail, a defendant must demonstrate both that counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. Id. at 687-696; *Jones v. State*,

279 Ga. 854, 855 (622 SE2d 1) (2005). We need not determine whether counsel's performance was deficient if we determine that the prejudice prong is not satisfied in any event. *Jackson v. State*, 282 Ga. 494, 497 (651 SE2d 702) (2007).

The general requirement is that the defendant must "affirmatively prove" prejudice, because "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial." *Strickland*, 466 U. S. at 693. Consequently, mere speculation on the defendant's part is insufficient to establish *Strickland* prejudice, see *Cormier v. State*, 277 Ga. 607, 608 (592 SE2d 841) (2004), and counsel's failure to raise a claim that is meritless is, by definition, not prejudicial, *Hampton v. State*, 282 Ga. 490, 492 (651 SE2d 698) (2007).

Pierce contends her trial counsel's performance was prejudicially unprofessional in three respects. First, she points to trial counsel's failure to obtain the color copies of the autopsy photos. Second, she alleges inadequate investigation in waiting until 18 months after the crimes took place to secure funds from the court to hire an investigator. These two claims are plainly meritless. As explained in the discussion of her *Brady* claim in Division 2 above, Pierce has failed to show that there is a reasonable probability that the outcome of the trial would have been more favorable to her had trial counsel obtained color copies of the autopsy photos. Similarly, Pierce has failed to allege, much less show, any harm to her defense from trial counsel's alleged undue delay in seeking funds from the trial court to hire an investigator. Pierce's failure to show *Strickland* prejudice is fatal to these two claims of ineffective assistance of counsel.

Pierce's third claim of ineffective assistance of counsel involves trial counsel's failure to object, under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to the State's alleged racially discriminatory use of its peremptory strikes to obtain the all-white jury that convicted Pierce. In denying the motion for new trial, the trial court stated that Pierce "failed to provide any evidence as to the composition of the jury pool or the jury in this case," and that "[w]ithout such evidence, it is impossible to tell whether [trial counsel's] failure to raise a *Batson* challenge prejudiced the defense." The trial court's summary of the record evidence, however, is not entirely accurate.

At the motion for new trial hearing, Pierce presented testimony from her trial counsel, Kevin Joseph Rodgers, as well as the notes Rodgers took during voir dire. Rodgers testified that his failure to raise a *Batson* claim at trial was not a strategic decision, explaining that he intended to object but "just forgot to keep track of it" after the third or fourth potential juror was questioned. On the merits of

the *Batson* issue, Rodgers testified that "[i]t's hard to find a black juror in Cobb County." While he recalled that there were "five or six" African-Americans among the 46 potential jurors questioned in voir dire (even though his incomplete notes only indicated two African-Americans in the pool), no African-Americans were selected to serve on the jury. Thus, Pierce did present *some* evidence regarding the racial composition of both the jury pool and the 12 jurors and two alternates chosen to try her. Nevertheless, we will affirm the trial court's denial of Pierce's motion for new trial under the "right for any reason" rule if, despite its erroneous statement, the ultimate judgment was correct. See *Abdulkadir v. State*, 279 Ga. 122, 125, n. 16 (610 SE2d 50) (2005).

To succeed on her claim of ineffective assistance of counsel, Pierce was required to show not only that trial counsel should have raised a *Batson* challenge, but also that the challenge would have been successful. *Batson* established a three-step process for ferreting out racial discrimination in jury selection:

> First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination."

*Johnson v. California*, 545 U. S. 162, 168 (125 SC 2410, 162 LE2d 129) (2005) (citations and footnote omitted). See also *Rakestrau v. State*, 278 Ga. 872, 874 (608 SE2d 216) (2005).

The first step of the *Batson* inquiry is not particularly onerous; a defendant need only "produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson*, 545 U. S. at 170. Pierce presented evidence that she is African-American, that the State used at least one peremptory strike to remove an African-American from the jury pool, that there were "five or six" potential African-American jurors, and that the jury that convicted her was all-white. In addition, Pierce's counsel, an experienced criminal defense attorney, testified that African-American jurors are a rarity in Cobb County. See *Johnson*, 545 U. S. at 169 (noting "wide variety" of evidence that can be enlisted to make out prima facie case of discrimination). See also *Miller-El v. Dretke*, 545 U. S. 231, 240-266 (125 SC 2317, 162 LE2d 196) (2005).

Pierce did not, however, show how many of the African-Americans in the jury pool were removed by the State as opposed to being struck by the defense or being among the final eight potential jurors, who were neither struck nor selected to serve, because a jury of 12 with two alternates was chosen before their numbers were reached in the jury selection process. Moreover, the record shows that the defense struck at least two of the at most "five or six" African-Americans in the jury pool, and of the two African-Americans Pierce identified as having been struck by the State, one was actually struck by the defense.[3] Thus, we cannot conclude that Pierce presented sufficient evidence for the trial court to draw an inference of racial discrimination in the State's use of its peremptory strikes.

In addition, even if such an inference were drawn, the remaining record is insufficient for us to conclude that the *Batson* claim would have been successful. Had a *Batson* objection been raised at trial and the inference of purposeful discrimination accepted, the burden would have then shifted to the State to come forward with race-neutral explanations for its peremptory strikes. However, in the context of an ineffective assistance of counsel claim, it was Pierce's burden, not the State's, to ensure that the trial court had sufficient information to determine the merit of a *Batson* challenge. See *Stanley v. State*, 283 Ga. 36, 39 (656 SE2d 806) (2008) (holding that to show ineffectiveness based on counsel's failure to file a motion to suppress, the defendant must make a strong showing that the evidence would have been suppressed if the motion had been filed, even though the State would have had the burden of proving the search was lawful at a pre-trial suppression hearing). See also *Rakestrau*, 278 Ga. at 874 ("The 'ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.' ") (citation omitted).

Pierce did not call the prosecutors in her case to testify at the motion for new trial hearing, nor did she seek their notes or other evidence from voir dire. The trial court could have requested such evidence on its own, but it was not required to do so. See *Trammel v. State*, 265 Ga. 156, 156 (454 SE2d 501) (1995) (affirming where trial court, on motion for new trial, held sua sponte *Batson* hearing

---

[3] Pierce's counsel testified that he was particularly surprised by the State's use of a peremptory strike to remove an African-American he thought would be an ideal juror from the prosecution's standpoint: a retired veteran whose military experience consisted of prosecuting defendants in courts martial. As Rodgers put it at the motion for new trial hearing, "I thought . . . the State would love him." Apparently the State agreed, as the record shows that it was the defense, not the State, that used a strike – indeed, Pierce's final strike – to remove this potential juror.

at which State introduced race-neutral reasons for challenged strikes). Absent this evidence, or at least the State's response to Pierce's attempts to gather this evidence,[4] the trial court had no way of knowing whether the State could produce race-neutral explanations for whatever strikes it made and, if so, of evaluating their credibility so that it could decide, at step three of the *Batson* analysis, whether there was purposeful racial discrimination in the selection of Pierce's jury. Pierce's mere speculation that the State had no such explanations, or that the trial court would have found the State's race-neutral explanations to be pretextual, is insufficient to establish a meritorious *Batson* claim. See *Johnson*, 545 U. S. at 172 ("[S]peculation does not aid our inquiry into the reasons the prosecutor actually harbored for a peremptory strike.") (citation and punctuation omitted). Accordingly, the trial court did not err in rejecting Pierce's ineffective assistance of counsel claims and denying her motion for new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 2009.

*Jack J. Menendez*, for appellant.

*Patrick H. Head, District Attorney, Amelia G. Pray, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.

---

[4] See *Johnson*, 545 U. S. at 171, n. 6 ("In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge's inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant's prima facie case.").