## A09A1901. HAYNES v. THE STATE.
(690 SE2d 925)

ADAMS, Judge.

Christopher Jarrod Haynes appeals following his conviction by a jury of one count of child molestation and one count of sexual battery.[1]

Construed in favor of the verdict, the evidence at trial showed that on July 10, 2007, the 15-year-old victim was home alone at her family's new apartment. Because the phone was not yet connected, the victim walked to the apartment's courtyard area to look for her friend, Justin, to borrow his phone. As the victim was talking to Justin, 21-year-old Haynes arrived and began a conversation with the victim. After a couple of hours, the victim stated that she was going back to her apartment to use the computer. Haynes asked if he could come along and use her computer because his was not working.

The two entered the victim's apartment, and after they both used the computer, Haynes began talking to the victim about having sex. He asked her if she had a condom because he was "horny" and

---

[1] The jury acquitted Haynes on one count of false imprisonment and one count of possession of a weapon during a crime.

said he was going to have intercourse with her. The victim replied that she did not have a condom, she had a boyfriend, she did not want to have sex, and "plus it's illegal." Nevertheless, Haynes moved away from the computer, closed and locked the window, closed the blinds and made sure the door was locked. As he did so, the victim noticed that he had a knife wrapped in a bandanna sticking out of his pants pocket.

Haynes sat beside the victim on the sofa and put his arms around her while he tried to convince her to have sex with him. He told her that she would have fun and it would be "worthwhile." The victim told Haynes to let go of her, but he continued to hold her "kind of" tightly. She closed her legs together "really tight" and "hunker[ed] down," pulling her chest down closer to her legs. At some point, Haynes unzipped his pants and began running his hands over her back, her chest, and her lower back into her jeans. He did circles around her nipples telling her he was trying to "get [her] happy." He also rubbed her stomach and legs.

The victim testified that during this encounter she was scared of being stabbed or raped and estimated that this behavior continued for about 15 to 20 minutes until she grabbed Haynes' hand and held it still, telling him to stop. He then stood, zipped his pants, and sat down on the floor. He started apologizing repeatedly, telling the victim that he should not have been doing that and that it was wrong. After about one-half hour, Haynes got up and left the apartment through the front door.

Because the victim was afraid to go back outside, she e-mailed to ask a friend to call her father's house to see if someone could come get her. While she waited, she e-mailed another friend and told him everything that had happened. Her father sent her older brother, Jesse, to pick her up, and on the way to her father's house, she told Jesse everything that had happened. Her father later called the police.

The next day, the victim's sister saw Haynes in the apartment parking lot and called police. When an officer arrived, he approached Haynes and asked if he had any weapons. Haynes responded that he had a throwing knife in his back pocket and showed the officer a knife wrapped in a bandanna. The officer arrested him for carrying a concealed weapon. Over the next few weeks, a detective specializing in crimes against children and sexual exploitation interviewed both the victim and Haynes. Although Haynes at first denied being in the victim's apartment, he later admitted that he had been there but said he only used the computer and left. The detective obtained an arrest warrant against Haynes on the charges in this case based upon these interviews and e-mail messages demonstrating the victim's "immediate outcry" regarding the incident.

Haynes testified at trial that the victim invited him to go into the apartment that night, and he accepted. They both used the computer and later sat on the couch where they talked about her boyfriend among other things. Haynes denied ever asking for a condom or telling the victim that he wanted to have sex. He said he never touched her in any way. Haynes said that the victim appeared nervous; she kept getting up from the sofa to check the door because her mother was supposed to come home soon, so he left.

1. Haynes argues that his trial attorney was ineffective in failing to raise a *Batson*[2] challenge after the prosecution used all of its peremptory strikes to exclude six black females from the jury panel. Haynes' attorney testified at the hearing on the motion for new trial that he should have raised a *Batson* challenge, but in concentrating on his own challenges, he "overlooked" the race and gender of the jurors struck by the State.

This Court applies a two-part test to evaluate a claim of ineffective assistance of counsel as set out in *Strickland v. Washington*, 466 U. S. 668, 686 (104 SC 2052, 80 LE2d 674) (1984). To prevail under this test,

> a defendant must demonstrate both that counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. We need not determine whether counsel's performance was deficient if we determine that the prejudice prong is not satisfied in any event.

(Citations omitted.) *Pierce v. State*, 286 Ga. 194, 197-198 (4) (686 SE2d 656) (2009). Moreover, in order to establish that his counsel was ineffective in failing to raise a *Batson* challenge, Haynes "was required to show not only that trial counsel should have raised a *Batson* challenge, but also that the challenge would have been successful." Id. at 199 (4).

A *Batson* challenge requires the trial court to apply a three-part analysis of the State's jury strikes:

> *Batson* established a three-step process for ferreting out racial discrimination in jury selection: First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has

---

[2] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

(Citations and punctuation omitted.) *Pierce v. State*, 286 Ga. at 199 (4). See also *Rakestrau v. State*, 278 Ga. 872, 874 (608 SE2d 216) (2005). Here, even assuming that the State's six peremptory strikes of black females established a prima facie showing of discriminatory intent, Haynes has made no attempt to demonstrate that the State could not have offered permissible race- or gender-neutral justifications for those strikes. Although the State would have borne the burden at trial of justifying its strikes, "in the context of an ineffective assistance of counsel claim, it was [Haynes'] burden, not the State's, to ensure that the trial court had sufficient information to determine the merit of a *Batson* challenge." (Citation omitted.) *Pierce v. State*, 286 Ga. at 200 (4). See also *Rakestrau v. State*, 278 Ga. at 874 ("ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike") (citation and punctuation omitted).

Haynes relied solely upon the fact of the State's peremptory strikes to support his claim of inadequate representation. He made no attempt to obtain testimony from prosecutors or to present any other evidence regarding the basis for the State's peremptory strikes. Absent such evidence, "the trial court had no way of knowing whether the State could produce race-neutral explanations for whatever strikes it made and, if so, of evaluating their credibility so that it could decide, at step three of the *Batson* analysis, whether there was purposeful racial [or gender] discrimination" in selecting the jury. *Pierce v. State*, 286 Ga. at 201 (4).

Because the record is insufficient to allow a determination of whether a *Batson* challenge would have been successful, Haynes cannot show a reasonable probability that the outcome of his trial would have been different but for his counsel's failure to raise the challenge, and his claim of ineffective assistance of counsel fails.

2. Haynes also asserts that the evidence at trial was insufficient to support his conviction for child molestation. Under OCGA § 16-6-4 (a), a defendant is guilty of child molestation when he or she does "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." The indictment here alleged that Haynes committed an immoral and indecent act, "to wit: place[d] his hands on the chest, stomach, and vaginal area of . . . a

child under 16 years of age, with the intent to arouse and satisfy" his own sexual desires. Haynes argues the State was, therefore, required to show that he placed his hands on all three identified parts of the victim's body — the chest, stomach and vaginal area — in order to establish the charged crime. Because the State presented no evidence that Haynes touched the victim's vaginal area, he argues that a fatal variance existed between the allegata and the probata at trial.

> Contrary to [Haynes'] assertion, our law does not demand that each statement of the indictment be proven. A variance between the allegata and the probata is not fatal unless it misinforms the defendant as to the charges against him or leaves him open to subsequent prosecutions for the same offense.

(Citation and punctuation omitted.) *Harmon v. State*, 208 Ga. App. 271, 273 (3) (430 SE2d 399) (1993), overruled on other grounds, *Waits v. State*, 282 Ga. 1, 5 (2) (644 SE2d 127) (2007). Thus,

> [o]ur courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused.

(Punctuation and footnote omitted.) *Turner v. State*, 231 Ga. App. 747, 747-748 (1) (500 SE2d 628) (1998).

Here, the indictment alleged that Haynes committed child molestation by touching three separate parts of the victim's body. But OCGA § 16-6-4 (a) does not require proof of multiple acts in order to establish the offense of child molestation, and the State was not required to present proof that Haynes touched the victim in three different places in order to establish the offense. "Because the statute requires proof of only one act, inclusion in the indictment of more than one such act is mere surplusage, which is unnecessary to constitute the offense, need not be proved, and may be disregarded." (Citations and punctuation omitted.) *Brown v. State*, 242 Ga. App. 347, 348 (1) (529 SE2d 650) (2000) (indictment alleged assault by applying a flammable liquid to victim and igniting the liquid, but evidence showed only application of liquid). See also *Turner v. State*, 231 Ga. App. at 748-749 (1) (no fatal variance where sodomy indictment alleged defendant both performed and submitted to sodomy with minor, but proof showed only submission); *Lubiano v. State*, 192 Ga. App. 272, 273-274 (1) (a) (384 SE2d 410) (1989) (no fatal variance where indictment alleged assault by kicking and by

revolver but evidence showed only kicking).

Under these circumstances, the indictment in this case put Haynes on notice of the acts against which he was required to defend, and he would not be subject to a later prosecution for the same actions alleged in this indictment. Accordingly, no fatal variance occurred. See generally *Huntley v. State*, 271 Ga. 227, 229 (2) (518 SE2d 890) (1999); *Stander v. State*, 226 Ga. App. 495, 497 (1) (486 SE2d 712) (1997).

3. Haynes further contends that the trial court erred in denying his motion for a directed verdict on the count of sexual battery. The offense of sexual battery occurs when a person "intentionally makes physical contact with the intimate parts[3] of the body of another person without the consent of that person." OCGA § 16-6-22.1 (b). The indictment in this case alleged that Haynes committed sexual battery by making "physical contact with the intimate parts of the body to wit: inner thighs and breasts" of the victim.

Haynes argues on appeal that the trial court should have granted his motion for directed verdict because the indictment as read to the jury did not allege that the physical contact was made without the victim's consent and thus he was not charged with any crime. At the close of the State's case, Haynes moved for a directed verdict as to all counts on the general grounds that a rational trier of fact could not find the elements of the offenses beyond a reasonable doubt based upon the State's evidence. He did not, however, make a motion for directed verdict based upon any deficiency in the indictment, and, indeed, such a motion would be improper. "A motion for directed verdict of acquittal is not the proper way to contest the sufficiency of an indictment. A motion for a directed verdict of acquittal addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment." (Citations and punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 559 (2) (507 SE2d 484) (1998).

Moreover, nothing in the record before us indicates that Haynes filed a special or general demurrer to the indictment or otherwise raised the issue below. And following judgment, a defendant may only attack an indictment by a motion in arrest of judgment or habeas corpus:

> When an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law and, upon the trial, no demurrer to the indictment is

---

[3] "Intimate parts" as defined under the Code section includes inner thighs and breasts of a female. OCGA § 16-6-22.1 (a)

interposed and the accused is convicted under the indictment and judgment is entered on the verdict, the accused's proper remedy is a motion in arrest of judgment or habeas corpus.

(Citations and punctuation omitted.) *McKay v. State*, 234 Ga. App. at 559 (2). See also *Jackson v. State*, 284 Ga. App. 619, 621 (2) (644 SE2d 491) (2007). Because Haynes failed to follow either of these procedures, we need not reach the merits of this argument.[4]

4. Haynes also asserts that the trial court erred in sentencing him on both child molestation and sexual battery because the two crimes merge as a matter of fact. But "a crime does not merge into another unless it is established by proof of the same or less than all the facts required to support the other offense." (Citation and punctuation omitted.) *Smashum v. State*, 293 Ga. App. 41, 43 (2) (666 SE2d 549) (2008). See also *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

In this case, the indictment alleges various acts to support the crimes charged. The charge of child molestation as alleged in the indictment required proof of physical contact with either the victim's chest, stomach or vaginal area with the requisite intent. The count of sexual battery required proof of physical contact with either the victim's inner thighs or breasts. The evidence at trial supported a finding that Haynes touched the victim on her legs, her chest, her breasts, and her stomach, in addition to other portions of her body. The evidence that Haynes had his pants unzipped and told the victim he wanted to have sex with her supported a finding that he acted with the intent to satisfy his own sexual desires.

Accordingly, the charge of child molestation was established by evidence that, with the requisite intent, Haynes touched the victim's chest and also by evidence that he touched her stomach.[5] And at a minimum, the crime of sexual battery was established by evidence that he touched her breasts. Even if we were to assume that the allegations of contact with the chest and the breasts referred to the same portion of the body, the State also proved child molestation by the separate act of touching the stomach. We find no merger under

---

[4] Moreover, as Haynes acknowledges, a person under the age of 16 cannot legally consent to a sexual act. *Chase v. State*, 285 Ga. 693, 696 (2) (681 SE2d 116) (2009). The State, therefore, was not required to prove lack of consent to establish sexual battery in this case.

[5] See *Kolar v. State*, 292 Ga. App. 623, 624-625 (1) (665 SE2d 719) (2008) (rubbing stomach until hand went under waistband toward private area constituted child molestation); *Wormley v. State*, 255 Ga. App. 347, 348 (565 SE2d 530) (2002) (touching girls' thighs, backs, and knees constituted child molestation); *Chapman v. State*, 170 Ga. App. 779, 780 (1) (318 SE2d 213) (1984) (pulling up child's pajama top in child's locked bedroom in middle of night established child molestation).

these circumstances. See *Daniel v. State*, 292 Ga. App. 560, 565-566 (5) (665 SE2d 696) (2008) (no merger where proof that defendant touched outside of vagina as alleged in one count and penetrated vagina as alleged in another). Compare *Gunn v. State*, 300 Ga. App. 229, 230-231 (2) (684 SE2d 380) (2009) (charges of sexual battery and child molestation merged where charges based solely upon the same conduct).

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED FEBRUARY 11, 2010.

*Mack & Harris, Robert L. Mack, Jr.*, for appellant.

*Tracy G. Lawson, District Attorney, Sheryl D. Freeman, Assistant District Attorney*, for appellee.