## S11A1011. STOKES v. THE STATE.
### (715 SE2d 81)

MELTON, Justice.

Following his convictions for murder, felony murder, cruelty to children, and aggravated battery, Jeremy Antonio Stokes appeals, contending, among other things, that the evidence was insufficient to support the verdict and that he received ineffective assistance of

trial counsel.[1] For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that Stokes and Tamara Riley were the parents of four-month-old Jeremiah Stokes ("the baby"). On the morning of March 2, 2008, the baby was alive and well. Later, Stokes was alone with the baby for approximately two hours. During that time, paramedics were dispatched to the apartment, where they found Stokes holding the lifeless baby. At the hospital, Stokes gave varying versions of the events of the morning. At first, Stokes stated that the baby was crying in the other room, so he went in and held the baby to stop his crying. Stokes later said that the baby must have fallen off the sofa where Stokes was sleeping because, when Stokes woke up, the baby was shaking and gagging on the ground. After being confronted with the results of an autopsy, however, Stokes was interviewed again, and he confessed that his prior stories had been lies.

In Stokes' interview and in his testimony at trial, Stokes admitted to a number of actions consistent with the fatal injuries suffered by the baby. Stokes stated that the baby began to cry and would not stop, so Stokes grabbed him and squeezed him to make him stop. Stokes then put the baby down on his face. Stokes also said that he grabbed the baby's face and neck, squeezed him with his fingers, attempted to force a pacifier in the baby's mouth, and bit the baby on his back. In addition, at one point, Stokes quickly flipped the baby over, pinning one of his arms behind him. After his mishandling, the baby began drifting in and out of consciousness.

These actions taken against the baby and the resulting injuries were reflected in the autopsy findings. The medical examiner discovered that the baby had broken ribs, a torn gum and lip, bruises along the face and neck, a broken arm, and a swollen brain. The medical examiner determined that the baby's death was "very characteristic of a death by a manual, forcible suffocation with hands in and around the mouth." At trial, Stokes largely admitted that his actions were the cause of the baby's injuries, but he maintained that he never actually intended to cause harm. The medical examiner's testimony,

---

[1] On April 30, 2008, Stokes was indicted in Clayton County for two counts of malice murder, three counts of felony murder, two counts of cruelty to children, and aggravated battery. Following a jury trial, Stokes was found guilty of all counts on June 26, 2009, and he was sentenced to life imprisonment for malice murder with twenty consecutive years for each count of cruelty to children and twenty concurrent years for aggravated battery. The felony murder counts were vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining counts were merged for purposes of sentencing. Stokes filed a motion for new trial on July 20, 2009, and amended it on March 29, 2010. The trial court denied the amended motion on December 16, 2010. Thereafter, Stokes filed a motion for out-of-time appeal, which the trial court granted, and he filed a notice of appeal on March 10, 2011. The resulting appeal, which has been docketed to the April 2011 term of this Court, was submitted for decision on the briefs.

however, showed that the injuries suffered by the baby could not have been accidental, but, instead, were the result of considerable force being used against the child.

In addition to this evidence, Riley testified that, on a previous occasion, she admonished Stokes about hurting the baby by squeezing him too tightly. During this inappropriate squeezing, the baby cried loudly. After being criticized, Stokes threw the baby at Riley.

This evidence was sufficient to enable a jury to find Stokes guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Stokes contends that trial counsel rendered ineffective assistance by failing to raise a *Batson* challenge[2] after the State used five of its eight peremptory strikes against African-American potential jurors. Stokes, however, has not satisfied his burden of proof in making this claim.

"To succeed on [his] claim of ineffective assistance of counsel, [Stokes] was required to show not only that trial counsel should have raised a *Batson* challenge, but also that the challenge would have been successful." *Pierce v. State*, 286 Ga. 194, 199 (4) (686 SE2d 656) (2009). Stokes, however, has wholly failed to make the latter showing.

> Had a *Batson* objection been raised at trial and the inference of purposeful discrimination accepted, the burden would have then shifted to the State to come forward with race-neutral explanations for its peremptory strikes. However, in the context of an ineffective assistance of counsel claim, it was [Stokes'] burden, not the State's, to ensure that the trial court had sufficient information to determine the merit of a *Batson* challenge. See *Stanley v. State*, 283 Ga. 36, 39 (656 SE2d 806) (2008) (holding that to show ineffectiveness based on counsel's failure to file a motion to suppress, the defendant must make a strong showing that the evidence would have been suppressed if the motion had

---

[2] There are three steps involved in a *Batson* challenge:

First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination."

(Citations and footnote omitted.) *Johnson v. California*, 545 U. S. 162, 168 (II) (125 SC 2410, 162 LE2d 129) (2005). See also *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

been filed, even though the State would have had the burden of proving the search was lawful at a pre-trial suppression hearing).

*Pierce*, supra, 286 Ga. at 200-201 (4).

The record shows, however, that Stokes neither called the State's prosecutors to testify at the motion for new trial hearing, nor sought out or attempted to introduce their notes regarding the striking of jurors prior to trial.[3] To the contrary, only the State attempted to elicit this information during its cross-examination of Stokes' trial counsel, and the resulting testimony indicates that the State did have race-neutral reasons for using its peremptory strikes. In any event, Stokes wholly failed to support his contention of ineffective assistance with any evidence other than his own speculation. As such, his argument in this regard must be rejected. Id.

3. Stokes argues that the trial court erred by admitting evidence of his prior difficulty in which he squeezed and threw the baby at Riley without a sufficient showing of similarity. As an initial matter, Stokes' reliance on a similarity argument is misplaced.

Unlike similar transactions, prior difficulties do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people involved in the prosecution and are related and connected by such nexus. Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried. Evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

(Citations and punctuation omitted.) *Dixon v. State*, 275 Ga. 232, 232-233 (2) (564 SE2d 198) (2002). In this case, the prior difficulty evidence was properly admitted to show Stokes' bent of mind towards and course of conduct with the baby. Moreover, even if similarity were an issue in this matter, both the prior difficulty and the crimes for which Stokes was being tried involved inappropriate

---

[3] The trial court could have requested such evidence on its own, but it was not required to do so. See *Trammel v. State*, 265 Ga. 156 (1) (454 SE2d 501) (1995).

squeezing of the child. There was no error in the admission of the disputed evidence. Id.

4. Stokes contends that the trial court erred by admitting photographs which depicted the fatal injuries suffered by the baby as well as prior injuries to the baby's ribs. In addition, Stokes maintains that the trial court erred by allowing the medical examiner to give any testimony regarding the existence of these prior injuries.[4] Specifically, Stokes maintains that, although the evidence might have been relevant, its probative value was outweighed by its prejudicial effect. Stokes' argument is misplaced. "When a trial court is faced with the challenge that the probative value of evidence is outweighed by its tendency to unduly prejudice the jury, it must exercise its discretion in determining admissibility." (Citation omitted.) *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995). In this case, the photographs and testimony regarding the baby's prior healing rib fracture both served as part of the basis of the medical expert's opinion regarding the mechanism of death and was relevant to prior difficulty testimony showing that Stokes had improperly squeezed the baby in the past. Under these circumstances, the trial court did not abuse its discretion in admitting this relevant evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 2011.

*Stanley W. Schoolcraft III*, for appellant.

*Tracy Graham-Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.

---

[4] The record shows that the trial court did exclude one autopsy photograph which showed only the prior rib fracture and not the fatal injuries.