**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 22, 2014**

# In the Court of Appeals of Georgia

A14A0742. WATSON v. THE STATE.

McFADDEN, Judge.

After a jury trial, Patrick Watson was convicted of two counts of sexual battery (as lesser included offenses to the indicted offenses of child molestation) against his teenaged daughter, K. P., and one count of child molestation against his daughter's friend, M. S. Watson argues that the evidence did not support the child molestation conviction, but we find the evidence sufficient. He argues that the trial court gave an erroneous "unanimity charge" to the jury, but we find the challenged charge did not insist upon unanimity. He argues that the trial court improperly charged the jury that a minor cannot consent to sexual conduct in the context of sexual battery, but we find that the challenged charge correctly stated the law and Watson did not raise or obtain

a ruling in the trial court on whether the statute setting forth the offense of sexual battery is overly broad when applied to a minor. Watson argues that the trial court erred in preventing him from presenting certain good character evidence, but we find that he did not lay a foundation for the evidence. He argues his counsel was ineffective for failing to object to the alleged "unanimity" jury charge, but we find no deficiency because the charge did not insist on unanimity. Finally, he argues that the trial court should have merged his two sexual battery convictions for sentencing purposes, but we find that the convictions were to charges in the indictment that Watson committed separate and distinct acts. Accordingly, we affirm.

1. *Trial evidence.*

K. P., who was 14 years old at the time of the August 2008 trial, testified that she moved in with Watson when she was 11 years old. On three or four occasions, when she informed Watson that she needed a larger bra, he examined her breasts by touching them under her clothing. He did this even though K. P. told him it made her feel uncomfortable. On several other occasions, Watson examined and touched K. P.'s pubic area to determine if she was shaving that area. Again, Watson persisted in this conduct even though K. P. told him it made her uncomfortable. K. P. described an instance where, as she was leaving the bathroom wearing a towel, Watson stopped

2

her and asked her if she had shaved her pubic area. K. P. testified that she "ended up laying down in front of him and the bottom part of [her] towel he lifted up and he touched to see if [she] shaved."

K. P. testified that her friend M. S. spent the night with K. P. on November 11, 2007. While the two girls were in K. P.'s bedroom, they overheard what they believed to be sexual activity between Watson and a female acquaintance in another room, and they began joking and giggling about it. Later, Watson entered K. P.'s bedroom wearing a towel, and he asked if the girls were sexually aroused. He then sat on the bed and touched K. P.'s thigh near her vagina. K. P. discussed this incident with police the following day.

M. S., who was 15 years old at the time of trial, testified about the November 11 incident. She said that Watson came into the bedroom wearing a towel and asked K. P. if she was aroused. M. S. was lying on her stomach on the bed, and Watson lay across her legs, reached out his hand and touched her breasts, and then placed his hand on her buttocks. M. S. testified that she jumped off of the bed and Watson then put his hand down her pants, touching her vagina. When M. S. moved Watson's hand away, he again placed it on her pubic area, this time over her clothing. The next day, M. S. reported this incident to a friend, to a relative, and to the police. M. S. also

3

testified that, on a previous occasion, Watson had told her he "want[ed] to taste [her]" and "eat [her] pussy."

A special agent for the United States Naval Criminal Investigative Services testified that he became involved in the case because Watson was employed by the Navy. He testified that he interviewed Watson, who offered several different accounts of the November 11th incident. At points during the interview, Watson stated that he had asked if the girls were sexually aroused; that he had touched M. S.'s vagina (which he claimed was accidental); that he had talked with both girls about shaving their pubic regions; that during the shaving discussion he had pulled M. S.'s shorts to the side, exposed and touched her pubic area, and used two fingers to rub the hair next to her vagina; that he had made sexually explicit comments to the girls; that he had previously told M. S. he wanted to perform oral sex on her; and that he had showed K. P. how to check her breasts for lumps after she complained of breast pain. The jury heard a recording of that interview.

At trial, Watson presented witnesses who testified that K. P. had a reputation for untruthfulness. He also presented his direct naval commander, from whom he attempted to elicit testimony about his good reputation in the workplace, but the trial court excluded the testimony as irrelevant. On cross-examination, the state elicited

4

from this witness that Watson had a reputation for truthfulness. Finally, Watson presented testimony from his former girlfriend, who had lived with Watson and K. P. for two years and who testified that she had discussed issues about shaving and adolescent development with the girl.

2. *Sufficiency of the evidence.*

Watson argues that the evidence was insufficient to support the jury verdict that he committed child molestation by "plac[ing] his hand upon the vagina of [M. S.], a child under the age of sixteen, with the intent to arouse and satisfy [his] sexual desires," as alleged in the indictment. We disagree. The evidence, viewed in the light most favorable to the verdict, *Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013), showed that M. S. was under the age of 16, that Watson had expressed a sexual interest in her, and that on the evening of November 11 he had asked about her sexual arousal and put his hand down her pants, touching her vagina. This evidence authorized the jury to find Watson guilty of child molestation. See OCGA § 16-6-4 (a) (1) (a person commits child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person"); *Jackson v. Virginia* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

3. *Jury charges.*

Watson challenges the jury charges in two respects. He argues that the trial court erred in her charge on sexual battery as a lesser included offense to child molestation, a charge given in connection with the crimes against K. P. Watson also argues that the trial court erred when, in charging on sexual battery, the trial court instructed the jury that a person under the age of 16 lacked the legal capacity to consent to sexual conduct. Neither argument provides grounds for reversal.

(a) *Charge on lesser included offense.*

Watson argues that, as to several counts, the trial court improperly instructed the jury that it was required to reach a unanimous verdict on the greater offense of child molestation before it could consider the lesser offense of sexual battery. He so challenges instructions as to several counts of child molestation and as to the verdict form. Discussing one of the counts alleging molestation of K. P., the trial court instructed:

> Now, Ladies and Gentlemen, sexual [b]attery is a lesser included offense of child molestation. If you believe the Defendant is not guilty of child molestation as alleged in Count Two of this indictment you must then decide whether the Defendant is guilty of sexual battery[.]

The trial court gave similar instructions as to other counts alleging child molestation. Discussing the verdict form, the trial court instructed:

> The first thing you need to do in each one of these is to answer the first question. And it says, for example, in question one, as to Count Two, child molestation, we, the jury, find the defendant either guilty or not guilty. You put your verdict in here. Once you put your verdict in here, depending upon what your verdict is you still need to read what, the instructions in parentheses. If you find the Defendant guilty go to question two. If you find the Defendant not guilty answer the following question. And the following question is, as to sexual battery on Count Two, we, the jury, find the Defendant either guilty or not guilty. Now, Ladies and Gentlemen, whether you get to the second part depends on your answer in the first part so please be sure to understand that by going over this I'm not suggesting any answers, I'm just telling you you need to read and decide then after your first answer whether you need to answer what's after the parentheses or drop down to the next question.

We disagree with Watson's argument that these were impermissible "unanimity" charges. A jury must consider a greater offense before it can vote on a lesser offense. *Cantrell v. State*, 266 Ga. 700, 703 n. 3 (469 SE2d 660) (1996) Accordingly, although a trial court may not instruct the jury that it must reach a unanimous verdict on a greater offense before considering a lesser offense, the trial

court may instruct the jury to *consider* the greater offense before considering the lesser offense. *Armstrong v. State*, 277 Ga. 122, 123 (2) (587 SE2d 5) (2003). A sequential charge that instructs the jury to consider a lesser offense only if it did not believe the defendant to be guilty of the greater offense, "is acceptable so long as the trial court does not insist upon unanimity with regard to the jury's decision on the greater offense." *Yaeger v. State*, 274 Ga. 216, 219 (3) (552 SE2d 809) (2001) (citations omitted); see also *Cantrell*, 266 Ga. at 702 n. 2 (explaining that Supreme Court had "no quarrel" with charge that jury "should not consider a lesser offense unless the defendant be found not guilty of the greater offense . . . so long as the court does not insist upon unanimity and is willing to accept a verdict on the lesser charge") (citation omitted).

The charges challenged by Watson were sequential charges that instructed the jury to first consider the greater offense and to proceed to consider the lesser offense if it found Watson not guilty of the greater offense. In that respect they were indistinguishable from the acceptable charges discussed by our Supreme Court in cases such as *Yaeger*, 274 Ga. at 219 (3), *Camphor v. State*, 272 Ga. 408, 414-415 (6) (d) (529 SE2d 121) (2000), and *Cantrell*, 266 Ga. 702 n. 2. Compare *Kunselman v. State*, 232 Ga. App. 323, 325 (1) (501 SE2d 834) (1998) (trial court erred in giving

8

charge that instructed jury to consider the lesser included offense if and only if it found the defendant not guilty of the greater offense and, "shortly thereafter, . . . [giving] the usual pattern charge requiring a unanimous verdict"). Because, in this case, "neither the trial court nor the verdict form required the jury to reach a unanimous verdict on the greater offense before considering the lesser-included offense," there is no reversible error. *Armstrong,* 277 Ga. at 123 (2).

(b) *Charge on minor's ability to consent in the context of sexual battery.*

Watson argues that the trial court erred when, in the charge on sexual battery, the trial court instructed the jury over Watson's objection that "under Georgia law a person under the age of sixteen lacks legal capacity to consent to sexual conduct." He argues that the rule regarding a minor's inability to consent should not apply to the offense of sexual battery because it removes the element of "lack of consent" from that offense, rendering the offense overly broad. We find no ground for reversal.

The trial court's charge "was an accurate statement of the law and was adjusted to the facts of this case." *Johnson v. State*, 296 Ga. App. 112, 113 (1) (673 SE2d 596) (2009) (citations omitted). "The age of consent in Georgia is 16," *Chase v. State*, 285 Ga. 693, 696 (2) (681 SE2d 116) (2009) (citations omitted), and we have upheld the giving of charges regarding the inability of a person under the age of 16 to consent

9

in sexual battery cases. See *Engle v. State*, 290 Ga. App. 396, 398 (2) (659 SE2d 795) (2008); *Carson v. State*, 259 Ga. App. 21, 24 (5) (b) (576 SE2d 12) (2002); *Hendrix v. State*, 230 Ga. App. 604, 606 (2) (497 SE2d 236) (1997); see also *Haynes v. State*, 302 Ga. App. 296, 302 (3) n. 4 (690 SE2d 925) (2010) (applying age of consent to hold that the state is "not required to prove lack of consent to establish sexual battery"). Our cases in that regard are consistent with the principle, expressed by our Supreme Court in connection with a case involving rape, "that the element of 'against her will' was automatically shown by [the minor victim's] age." *Drake v. State*, 239 Ga. 232, 233 (1) (236 SE2d 748) (1977). See also *Lee v. State*, 300 Ga. App. 214, 216 (1) (684 SE2d 348) (2009) (holding state could prove aggravated sexual battery by showing, among other things, "that the victim did not consent or *lacked the capacity to consent*" in case where defendant father argued he had been addressing minor daughter's medical and hygiene needs) (citations omitted; emphasis supplied); *Strickland v. State*, 223 Ga. App. 772, 776-777 (1) (b) (479 SE2d 125) (1996) (indictment charging that defendant intentionally touched breast of minor victim included all necessary elements to show sexual battery although it did not allege lack of consent, because victim could not legally consent).

10

Nevertheless, in his appellate brief Watson argues that the rule that someone under 16 cannot consent to sexual conduct, when applied to the sexual battery statute, OCGA § 16-6-22.1, renders that statute overly broad. That statute provides that "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person," and it defines "intimate parts" to mean "the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the breasts of a female." OCGA § 16-6-22.1 (a), (b). Watson argues that, if persons under the age of 16 can never consent to the touching of their intimate parts, then the statute criminalizes conduct that, he asserts, "does not necessarily involve immoral/indecent conduct and does not always involve a sexual act." See generally *Strickland*, 223 Ga. App. at 774 (1) (a) (noting that sexual battery requires only general intent). He offers, as examples of overbreadth, scenarios such as a mother putting diaper rash cream on a child, a grandfather (or a mall Santa Claus) allowing a child to sit on his lap, and teenage basketball players blocking each other from rebounds with their buttocks and hips.

We acknowledge the possibility that the language of OCGA § 16-6-22.1 could be construed to include non-sexual scenarios such as those proposed by Watson. But

11

Watson's challenge to the statute's potential overbreadth is a challenge to its constitutionality. The appellate courts of this state "will not pass upon the constitutionality of a statute when the challenge was not directly and properly made in the trial court and distinctly ruled on by the trial court." *In re D. H.*, 283 Ga. 556, 557 (3) (663 SE2d 139) (2008) (citations omitted). Although Watson argued generally in his motion for new trial that the trial court's jury charge violated his constitutional rights, he did not properly raise a constitutional challenge to OCGA § 16-6-22.1. See id. at 557-558 (3) (setting forth the specific showings that party must make to properly raise constitutional challenge to statute). Moreover, the trial court did not distinctly rule on the constitutional challenge. Consequently, Watson is procedurally barred from raising a constitutional challenge to OCGA § 16-6-22.1 on appeal. Id. at 557 (3).

4. *Good character evidence.*

Watson argues that the trial court erred in preventing his commanding naval officer from testifying about Watson's good character. He proffered that the witness would testify that he knew Watson's reputation among the employees at his job, and that the reputation was "very good." The witness admitted, however, that he had no knowledge of Watson's reputation in the community outside of his workplace. The

12

trial court ruled the proffered testimony inadmissible on the grounds that Watson's reputation on the job was not relevant. We find no error. Under the rules of evidence in effect at the time of trial, "[r]estricting counsel from asking a witness about an individual's reputation at business and among the employees is not error, as this is not the correct test" for the admission of good character evidence. *Haralson v. State*, 223 Ga. App. 787, 792 (5) (479 SE2d 115) (1996) (citations omitted). See also *Doss v. State*, 264 Ga. App. 205, 208-209 (3) (590 SE2d 208) (2003); *Foster v. State*, 170 Ga. App. 222, 225 (9) (316 SE2d 828) (1984). (Under Georgia's new Evidence Code, OCGA §§ 24-4-404 and 24-4-405 govern the admission of evidence regarding a criminal defendant's good character.)

5. *Effectiveness of counsel.*

Watson argues that his trial counsel was ineffective in failing to object to the allegedly improper "unanimity" jury charges discussed in Division 3 (a), supra. Because the charges were not improper, the trial court was not deficient in failing to object to them. See *Williams v. State*, 309 Ga. App. 688, 691-692 (2) (710 SE2d 884) (2011). Consequently, Watson has not shown he received ineffective assistance of counsel. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80

13

LE2d 674) (1984) (requiring party claiming ineffective assistance to show both deficient performance by trial counsel and actual prejudice).

6. *Merger.*

Watson argues that the trial court was required to merge for purposes of sentencing his two convictions of sexual battery against K. P. The first conviction was for sexual battery as a lesser included offense to child molestation, which the indictment alleged Watson committed by "plac[ing] his hand upon the pubic area of [K. P.]," and the second conviction was for sexual battery as a lesser included offense to child molestation, which the indictment alleged Watson committed by "plac[ing] his hand upon the breasts of [K. P.]." Because these counts of the indictment charged Watson with separate and distinct acts, the trial court did not err in refusing to merge for sentencing purposes the convictions that were based on those counts. See *Anderson v. State*, 306 Ga. App. 423, 424 (2) (702 SE2d 458) (2010) (trial court did not err in refusing to merge convictions where counts in indictment charged defendant with committing offenses by separate and distinct acts). Compare *Daniels v. State*, 320 Ga. App. 340, 343-344 (2) (739 SE2d 773) (2013) (trial court erred in refusing to merge convictions where counts in indictment charged defendant with

14

identical conduct). The fact that Watson was convicted for lesser included offenses on those counts does not change this result.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur*.