**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 4, 2021**

# In the Court of Appeals of Georgia

A21A0263. NEMBHARD v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Andrew Jamaal Nembhard was convicted of two counts of child molestation (OCGA § 16-6-4 (a)) and two counts of sexual battery (OCGA § 16-6-22.1 (d)). He appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support his convictions on two of the counts, (2) the trial court erroneously admitted hearsay and bolstering evidence, and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict. . . . [W]e neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain that the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter

of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld.

(Punctuation and footnotes omitted.) *Goss v. State*, 305 Ga. App. 497, 497-498 (1) (699 SE2d 819) (2010).

So viewed, the evidence shows that after Nembhard's former neighbors, John and Demetria Dargon, mentioned that they wanted to find a reading tutor for their eleven-year-old daughter N. D., Nembhard offered to tutor both N. D. and Z. D., the Dargons' younger daughter. A few days later, Nembhard went to the Dargons' home to tutor the girls. Nembhard and N. D. went to the family's study area while Demetria and Z. D. were in the living room. When their time was over, Nembhard brought N. D. to Demetria, who noticed that N. D. looked sad. After Nembhard took Z. D. to the study area for her tutoring session, Demetria asked N. D. what was wrong. N. D. got weepy and told her mother that Nembhard had touched her on her chest and between her legs. At trial, N. D. testified that Nembhard pulled her onto his lap and, when she read a word correctly, rubbed her chest with his hands. Nembhard also lifted N. D.'s skirt and put his hands "down there." N. D. felt uncomfortable and unsafe when Nembhard touched her, but she continued reading because she was scared.

Demetria took N. D. to her bedroom and called John, then she left the room to get Z. D. As she approached the study area, Demetria noticed that Z. D. was on Nembhard's lap, and she immediately took Z. D. into the living room. Z. D. later disclosed that Nembhard had touched her hips, "private part," and lower back while they were reading. John arrived home soon after Demetria and N. D. called him, and he spoke to N. D. in his car, recording part of their conversation, before entering the house. The Dargons called 911, and police officers responded to the scene.

Nembhard was charged with four counts of child molestation. As to Counts 1 and 2, those related to N. D., the jury convicted Nembhard of child molestation. As to Counts 3 and 4, those related to Z. D., the jury convicted him of the lesser included offense of sexual battery. The trial court imposed a 25-year sentence, with the first 12 years to be served in confinement and the remainder to be served on probation. Nembhard filed a motion for new trial, which the trial court denied. He then filed this appeal.

1.

Nembhard contends that the evidence was insufficient to sustain his sexual battery convictions on Counts 3 and 4, those relating to Z. D., because the State failed to show that the touching of Z. D. was without her consent. Noting Z. D. testified that

3

she sat on his lap consensually, Nembhard emphasizes that Z. D. did not testify that she was scared of him or that she told him to stop once the touching began. We are not persuaded that Z. D. consented to the touching.

To establish the offense of sexual battery, the State must prove three elements: "(1) physical contact with the victim's intimate body parts; (2) intent to have such contact; and (3) lack of consent on the part of the victim." *Watson v. State*, 297 Ga. 718, 719 (2) (777 SE2d 677) (2015). The Supreme Court has determined that the State must establish "actual proof of the victim's lack of consent, regardless of the victim's age." Id. at 720 (2). The Supreme Court has also acknowledged, however, that in some circumstances, no rational juror would be able to find that the contact was consensual. See *State v. Williams*, 308 Ga. 228, 232-233 (2) (838 SE2d 764) (2020). In *Williams*, the defendant was convicted of aggravated sexual battery for touching his four-year-old granddaughter's vagina with his finger. Although, the trial court failed to charge the jury that the State was required to prove a lack of consent, the Supreme Court of Georgia nevertheless affirmed his conviction. The Court reasoned that this omission did not affect the defendant's substantial rights as no rational juror could have found that the State failed to prove a lack of consent because "the victim was so very young, the conduct was clearly sexual in nature, the adult was

4

an authority figure in the child's life, and the evidence was strong [that the touching actually occurred]." Id. at 233 (2).

We believe that in this case, as in *Williams*, no rational juror could have found that the State failed to prove a lack of consent. Z. D. was only eight years old at the time of the incident, the touching of her "private part" had no benign or non-sexual purpose, and Nembhard was in an authority position as Z. D.'s tutor. Further, although Z. D.'s testimony may suggest that she voluntarily sat on Nembhard's lap – as she testified that "he told me to come sit on his lap, and so I did" – her testimony does not suggest that she knew Nembhard would start touching her once she was on his lap. Importantly, Z. D. recalled that, when they were reading their first page, Nembhard started touching her hips, "private part," and lower back around her waist. Z. D. testified that she felt uncomfortable from the touching and that she "didn't really know what he was doing." If Z. D. had expected the touching when she decided to sit on Nembhard's lap, she would not have felt uncomfortable and confused by it. Accordingly, we reject Nembhard's argument that there was insufficient evidence that the touching of Z. D. was without her consent.

2.

Nembhard contends that the trial court erred in overruling his objections to State's Exhibit 4, a recorded audio statement N. D. made to her father on the day of the outcry. Nembhard maintains that the recording was hearsay that did not fall within any exception to the hearsay rule and asserts that it improperly bolstered N. D.'s trial testimony. We conclude that the trial court correctly admitted this evidence under the Child Hearsay Statute, which provides:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

OCGA § 24-8-820 (effective July 1, 2013). Here, N. D.'s father testified that, after N. D. told him Nembhard had touched her, he used a tape recorder to record her detailed account of the events. He identified State's Exhibit 4 as the audio recording he made, and he summarized the contents of the recording. N. D. also testified at trial.

6

Nembhard contends that the recording does not fall within the Child Hearsay Statue because it was not admitted through the testimony of the person to whom it was made. The record belies this assertion, however, as the trial transcript clearly reflects that the recording was admitted through the testimony of Mr. Dargon, the individual who made the recording and the individual to whom N. D. recounted her story. Nembhard's contention that the recording improperly bolstered N. D.'s credibility is equally unpersuasive. The Statute itself contemplates testimony from both the child and the individual to whom the child made the out-of-court statement, and our law is clear that, when a recording is admitted under the statute, the interviewer may testify as to what the victim told him about the incident. See *Leggett v. State*, 331 Ga. App. 343, 347 (4) (771 SE2d 50) (2015) (rejecting claim of bolstering because forensic interviewer's testimony merely recounted her interview with the victim and the victim's statements about the incident and did not include any testimony that the interviewer believed the victim). Here, N. D.'s father, Mr. Dargon, testified as to the circumstances under which he made the recording and recounted what N. D. told him about the incident, but he did not testify that he believed N. D. was telling the truth. Accordingly, there was no improper bolstering, and the trial court did not abuse its discretion by admitting this evidence.

7

3.     Nembhard contends that his trial counsel was ineffective for (a) failing to use a peremptory strike on a prospective juror who knew defense counsel and (b) failing to object to the trial court's sequential unanimity jury instructions. Upon a review of the record, we conclude that both of these claims fail.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. See *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation removed). *Littlejohn v. State*, 320 Ga. App. 197, 205-206 (5) (739 SE2d 682) (2013). Importantly, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently

8

unreasonable that no competent attorney would have followed such a course." (Citation omitted.) *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016). And unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo." *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

(a)

Nembhard contends that his trial counsel performed deficiently by failing to use a peremptory strike on Juror 15, who indicated during voir dire that she knew counsel because he served as the defense attorney in an armed robbery and kidnaping case in which she was a victim.

During voir dire, Juror 15 indicated that she knew Nembhard's attorney because she was a victim in an armed robbery and kidnaping case in which he represented the defendant. The trial court asked Juror 15, "[D]o you feel like you can be a fair juror under the circumstances?" and she answered, "Yes, sir." Juror 15 explained that she and her brother were victims in the prior case, and the assailant was a stranger to them. In response to questioning by Nembhard's attorney, Juror 15 acknowledged that counsel had cross-examined her and her brother in the earlier case.

9

Counsel asked, "Would that in any way, shape or form cause you to have any ill feelings towards my client or be skewed toward the case in any shape, way or form?" The prospective juror answered, "No sir. Even though that person was accused, you know, we weren't in favor for him. We knew that you, you know, you were doing your job, so just doing what you had to do." Ultimately, counsel decided against using a peremptory strike, despite having such strikes available, and Juror 15 served as a juror for Nembhard's trial.

On appeal, Nembhard argues that his trial counsel rendered ineffective assistance by failing to use a peremptory strike, despite having such strikes available, to prevent Juror 15 from serving on the jury. During the hearing on Nembhard's motion for new trial, trial counsel testified that he is a criminal defense attorney who has been in practice since 2003. He acknowledged that he had cross-examined Juror 15 in the previous trial but noted that the questioning was not hostile because her direct testimony was favorable to his client. As to why he did not move to strike this juror, trial counsel explained that he knew he would be exhausting all of his peremptory strikes, so he had to decide between a "rock and a hard place" when choosing which prospective jurors to strike. Although he could not recall all the factors he considered, counsel assured the court that the nine jurors he struck were,

in his opinion at the time, worse for the defense than Juror 15. As strategic reasons for his decision not to strike Juror 15, counsel noted that she was young, did not have children,"was a person that would hold the government to their standard of proof," and had shown no signs of having a vendetta against him. Counsel also testified that he discussed potential strikes with Nembhard.

Nembhard contends that trial counsel's decision not to strike Juror 15 was objectively unreasonable. But which, and how many, prospective jurors to strike is a "quintessential strategic decision." (Citation and punctuation omitted.) *Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016). And we cannot say under the circumstances of this case that "no competent attorney would have struck the jury as this lawyer did." Id. at 318-319 (4). Thus, Nembhard has not demonstrated that his trial counsel performed deficiently with respect to the failure to strike this juror. See id. at 318-319 (4) (holding that despite trial counsel second-guessing his own performance at the hearing on the motion for new trial, his overall testimony demonstrated his decision to not use a peremptory strike to remove a correctional officer from the jury was strategic).

Moreover, Nembhard has not shown there is a reasonable probability that the allegedly deficient performance of his trial counsel changed the outcome of the trial.

11

See *Simpson*, supra, 298 Ga. at 319 (4). He has not established that the juror at issue was not qualified, and he has not demonstrated that "any of the prospective jurors who were stricken by [his trial counsel] were more favorably inclined toward his case than the juror at issue who actually was selected." Id. Accordingly, even if his trial counsel had performed deficiently, reversal is not required because Nembhard has not affirmatively shown that he was prejudiced by his trial counsel's failure to move to strike the juror at issue. See id. (holding that even if trial counsel performed deficiently in failing to strike correctional officer from jury, defendant failed to show that such performance changed the outcome of the trial); *Eason v. State*, 331 Ga. App. 59, 67 (4) (c) (769 SE2d 772) (2015) (finding that defendant's claim that trial counsel rendered ineffective assistance in jury selection failed given the fact that defendant did not make "any showing that any of the jurors who served harbored any prejudice toward him or were disinclined to acquit him based on reasons other than the evidence presented at trial").

(b)     Nembhard also contends that his trial counsel was ineffective for failing to object to the trial court's jury instructions on lesser-included offenses. He asserts that his trial counsel had no strategic reason for failing to object when the trial court gave a sequential unanimity jury instruction – in other words, when the court told the

12

jury they must unanimously acquit Nembhard of child molestation before they could consider the lesser-included offense of sexual battery. This would be an incorrect statement of law, as "unanimity is not required for the greater offense before the jury can vote on the included offense." *Cantrell v. State*, 266 Ga. 700, 703 (469 SE2d 660) (1996).

A review of the transcript reveals, however, that the trial court did not give the jury a sequential unanimity instruction in this case. In its jury instructions, the trial court charged the jury on the elements of child molestation and then advised, "Although not set out in the indictment, as you consider the evidence during your deliberations, you may also consider the following lesser included offense: sexual battery." After reading the definition of sexual battery, the trial court instructed the jury as follows:

> If you do not believe that the Defendant is guilty as alleged in Count I, or if you have any reasonable doubt as to the Defendant's guilty as to Count I, then it would be your duty to acquit the Defendant in which event the form of your verdict would be, we, the jury, find the Defendant not guilty.
>
> Or, if after considering the testimony and evidence presented to you together with the Charge of the Court, you do not believe that the Defendant is guilty of child molestation as alleged in Count I, but find

13

and believe beyond reasonable doubt that the Defendant did commit the lesser included offense of sexual battery, you would be authorized to find the Defendant guilty of the lesser included offense of sexual battery as to Count I. In that event the form of your verdict would be, we, the jury, find the Defendant guilty of sexual battery.

The trial court read the same charge for each of the four counts.

We disagree with Nembhard's argument that this was an impermissible sequential unanimity charge. As we have explained,

[a] jury *must* consider a greater offense before it can vote on a lesser offense. Accordingly, although a trial court may not instruct the jury that it must reach a unanimous verdict on a greater offense before considering a lesser offense, the trial court may instruct the jury to consider the greater offense before considering the lesser offense.

(Citations omitted; emphasis supplied). *Watson v. State*, 329 Ga. App. 334, 338 (3) (a) (765 SE2d 24) (2014), reversed in part by *Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015). This is not a case where the judge told the jurors that they must unanimously acquit the defendant of the charged offense before they could consider the lesser-included offense. Compare *Kunselman v. State*, 232 Ga. App. 323, 325 (1) (501 SE2d 834) (1998) (retrial was required because "the jury was instructed that if it found [the defendant] not guilty, 'then and only then' could it consider the lesser

14

offense"). Instead, the trial court properly advised the jurors that if they found the defendant not guilty of the charged crime, they would be authorized to consider whether he committed the lesser-included crime. See *Camphor v. State*, 272 Ga. 408, 414 (6) (d) (529 SE2d 121) (2000) (no error where trial court charged the jury, "Should you find the defendant not guilty of the crime of burglary, you would be authorized to consider under the evidence whether or not he did, at said time and place, commit the lesser offense of criminal trespass"). Accordingly, the trial court's jury instructions were not erroneous, and trial counsel was not deficient for failing to object on this ground.

For the foregoing reasons, we conclude that the trial court properly denied Nembhard's motion for new trial, and we therefore affirm the trial court's judgment.

*Judgment affirmed. Hodges and Pipkin, JJ., concur.*