A01A0458. RILEY v. THE STATE.
(551 SE2d 833)

POPE, Presiding Judge.

Michelle Riley stabbed Gerald Smith, her estranged boyfriend, in the chest causing his death. She appeals her conviction and sentence for voluntary manslaughter and possession of a knife during the commission of a crime, and the denial of her motion for new trial. She enumerates six errors including that the evidence was not sufficient to support the verdict because the evidence showed that she acted in self-defense.

Construed in favor of the verdict, the evidence shows that on April 12, 1998, Riley and Smith had a series of arguments and altercations that culminated in Smith's death. The first occurred after Riley asked Smith to drive her and their two children to her home, but Smith wanted her to wait for twenty minutes. Shortly thereafter, after Riley got in Smith's car and Smith began driving toward Riley's home, the two resumed bickering, and Riley changed her mind and said she wanted to go to her mother's house. The argument continued in the car and escalated to a fist fight when they reached their destination. Part of the fight involved who was going to watch the children for the afternoon, each arguing the other should. Smith was the aggressor at this point, but Riley, who is five feet ten inches tall and weighs 156 pounds, was returning the blows. When one of Smith's friends restrained Riley, Smith hit her with a "sucker punch." Riley then went into her mother's house and came out with a knife, which she held "up." A witness testified that she held the knife in a "drawn back" position. Riley wanted to scare Smith away, and she said, that if he hit her again, she was going to "F" him up. After Smith left, she put the knife in her pocket.

Shortly thereafter, Smith drove with the children to the home of Chinika Williams, a friend of both Smith and Riley. He was looking for Riley, and he was "mad and mean and angry." Williams offered to keep the children, as she had done in the past, and otherwise, she tried to keep herself and the children out of Smith's way. Riley and her sister Tammy arrived a couple of minutes later while Williams was taking control of the children on the front porch. Riley came to get a spare key to her own house, and when she arrived, she saw that Smith was still mad. Smith continued to argue as Riley moved past Smith and up onto the porch. Smith then rushed up on the porch and confronted Riley, and the two argued. Even though Riley never saw

Smith holding any weapons, she took the knife out of her pocket "to scare him off" and told Smith to go. Smith taunted her saying either "oh, you're going use [sic] the knife?" or "I'll make you eat the knife." Tammy then tried to intervene to stop the fight. But when Riley turned to go inside, Smith picked up a plastic outdoor chair and hit Riley hard in the head and shoulder area. Riley then stabbed Smith one time, hitting him in the heart.

Riley was charged with felony murder for killing Smith during an aggravated assault with a deadly weapon and possession of a knife during the commission of a crime. She was convicted on the count of knife possession, and, on the felony murder count, she was convicted of the lesser included offense of voluntary manslaughter.

1. OCGA § 16-3-21 (a) provides that: "[a] person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force. . . ." Once evidence of self-defense is presented, the burden is on the state to disprove that defense beyond a reasonable doubt. *Diaz v. State*, 270 Ga. 421-422 (510 SE2d 529) (1999). Whether the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself is a question for the jury. *Anderson v. State*, 245 Ga. 619, 623 (1) (266 SE2d 221) (1980). When voluntary manslaughter is raised, the issue is whether, based on the evidence, the jury could have found beyond a reasonable doubt that the defendant "was so influenced and excited that [she] reacted passionately rather than simply to defend [her]self." (Citation and punctuation omitted.) *Mitchell v. State*, 199 Ga. App. 159, 160 (404 SE2d 329) (1991). See also OCGA § 16-5-2 (a).

Here competent evidence from Riley's own videotaped statement to the police supported a finding that she did not act in self-defense but out of anger. Immediately before the stabbing she told Smith, "I'm tired of you, I'm tired of you threatening me. . . ." So, in her own words, "I took my knife out my pocket. I said, you better go on, boy. I said, you better go." Riley told the police what happened next: "He hit me in my head with the chair, so I — I just stabbed him. I didn't know I stabbed him that hard." She explained, "I didn't meant [sic] for it to happen. I was just so mad at the time and that's all I had in my hand, you know, that I could have hit him. . . . That I could get back at him with it. . . ."

Thus, although there was evidence that she acted in self-defense, there was also evidence to support that she acted because she was mad and wanted to get back at Smith, thereby committing voluntary manslaughter. OCGA § 16-5-2 (a). "Circumstances which are suffi-cient to show voluntary manslaughter, as opposed to justifiable

homicide, include a situation in which sudden passion, or fear, is aroused in the actor, without malice aforethought, and the actor willfully kills his attacker, when it was not necessary for him to do so in order to protect himself." (Citation omitted.) *Thomas v. State*, 184 Ga. App. 131, 132 (2) (361 SE2d 21) (1987). See also *Williams v. State*, 245 Ga. App. 670, 671-672 (1) (538 SE2d 544) (2000) (acting out of rage, heated arguments, physical beatings, and fear of some danger support voluntary manslaughter convictions).

2. In four enumerations, Riley contends the court erred by refusing to give jury charges on involuntary manslaughter, criminal negligence, reckless conduct and accident.

Riley argues that the court should have charged involuntary manslaughter because the evidence supported the theory that the death occurred during the misdemeanor of simple battery (i.e., unlawful act involuntary manslaughter), not during a felony. But there was no evidence to support simple battery because Riley admits that she fought Smith with a knife in her hand by "stabbing at him." See *Van Doran v. State*, 244 Ga. App. 496, 497 (536 SE2d 163) (2000) (in aggravated assault conviction, where defendant could not remember using the knife and claimed that he had simply tried to defend himself with a knife in his hand, charge on simple battery not required). Riley either committed aggravated assault with a knife, a felony, or did not commit the crime because her use of the knife was justified. Id. And, "no death caused by a felony can possibly fall within either branch of involuntary manslaughter. . . ." *Baker v. State*, 236 Ga. 754, 757 (1) (225 SE2d 269) (1976). Riley was not entitled to a charge on involuntary manslaughter. See also *Dye v. State*, 202 Ga. App. 31 (413 SE2d 500) (1991).

Because Riley's actions in using the knife, either in self-defense or as an aggravated assault, were intentional, charges for criminal negligence, reckless conduct and accident were not warranted either.

With regard to criminal negligence, see OCGA § 16-2-1, and reckless conduct, OCGA § 16-5-60 (b), "the crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another." (Emphasis omitted.) *Bowers v. State*, 177 Ga. App. 36, 38 (1) (338 SE2d 457) (1985). As stated above, Riley either committed the intentional act of aggravated assault or her actions were justified. She was not entitled to a charge on these points of law.

In support of her request for a charge on accident under OCGA § 16-2-2, Riley points to her testimony at trial where she stated that she did not know at the time that she had stabbed Smith, but rather, that she had just been trying to fight him off with the knife in her hand. However, she also agreed that she was "stabbing at him." An instruction on accident is not warranted when a knife is used inten-

tionally against another. *Davis v. State*, 269 Ga. 276, 280 (3) (496 SE2d 699) (1998). Compare *Turner v. State*, 262 Ga. 359, 360-361 (2) (418 SE2d 52) (1992) (a gun could accidentally go off during a struggle). The court did not err in refusing to charge on accident.

3. Riley also contends that the court erred by failing to grant her mistrial request due to the absence of a subpoenaed defense witness. But Riley has not given any proffer of the witness' testimony, and therefore we cannot gauge any possible harm. *Brandon v. State*, 236 Ga. App. 203, 205 (511 SE2d 573) (1999).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JULY 5, 2001.

*Orin L. Alexis*, for appellant.

*Spencer Lawton, Jr.*, District Attorney, *Christine S. Barker*, Assistant District Attorney, for appellee.