**FIFTH DIVISION**
**BARNES,  P. J.,**
**MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2019**

# In the Court of Appeals of Georgia

A19A0493. AYERS-JONES v. THE STATE.                    GS-015C

GOSS, Judge.

In 2016, Betty Ayers-Jones was indicted for felony murder (OCGA § 16-5-1 (c)) and distribution of methamphetamine (OCGA § 16-13-30 (b)). In 2017, a jury found her guilty of the lesser-included offense of involuntary manslaughter (OCGA § 16-5-3) and acquitted her of distribution of methamphetamine. She appeals from the denial of her motions for new trial. On appeal, she argues that the verdict of guilt as to involuntary manslaughter is "contrary to the evidence" because the State failed to prove she committed any non-felony crime. For the reasons that follow, we disagree and affirm.

Construing Ayers-Jones's contention on appeal that the verdict is "contrary to the evidence" as a challenge to the trial court's denial of her motion for new trial on

the general grounds pursuant to OCGA §§ 5-5-20, 5-5-21, "this is a ground on which only a trial court may exercise its discretion to grant a new trial; we do not have the same authority." (Citation omitted.) *Calloway v. State*, 303 Ga. 48, 51 (1), n. 5 (810 SE2d 105) (2018). Appellate courts may "only review the case under the standard espoused in *Jackson v. Virginia* [443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)], to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict." (Citation and punctuation omitted.) *Lewis v. State*, 296 Ga. 259, 261 (765 SE2d 911) (2014).

So viewed, the evidence shows that in the early morning hours of June 13, 2015, Ayers-Jones, Sarah Jones, William Knight, and Matthew Good ingested methamphetamine[1] at the hair salon where Ayers-Jones worked in Louisville, in Jefferson County. There was evidence that Knight and Ayers-Jones loaded a methamphetamine mixture into some capsules, and that they put a stronger dose of the drug into one of the capsules, which Good ingested. About 30 minutes after taking the drug, the foursome got into an automobile, with Ayers-Jones driving, and headed toward Tybee Island. Good began to "trip out" and "act crazy," and was

---

[1] Jones and Knight were indicted along with Ayers-Jones. Knight pled guilty to involuntary manslaughter and distribution of methamphetamine, and testified at trial. Jones, who remained under indictment, also testified at trial.

"speaking in tongues." The group eventually stopped at a Wal-Mart in Swainsboro, and Good acted strangely, taking off his shirt, pants, and shoes, and walking around the car. Once he got back in the car, he began talking about demons. The group decided to cancel the Tybee Island trip and head back to Louisville in Jefferson County, with Knight driving. Good's behavior remained erratic. He rolled down the window and "act[ed] like he was going to jump out" as the car was traveling down the road, and was "hanging halfway out . . . of [the] vehicle." Ayers-Jones attempted to pull him back in. They eventually stopped the car on a dirt road in Emanuel County. When Ayers-Jones opened the car door, Good got out. Knight testified that he told Good that if Good did not get back into the car, "we're going to leave you." Good ran into the woods, barefoot. The remaining members of the group waited for about 35 minutes, but when Good did not return, Ayers-Jones put Good's clothes into the road, and the group drove back to the hair salon without Good. Ayers-Jones then smoked marijuana and took a nap. About two hours later, the trio went back to look for Good on the dirt road where they had left him. Unable to find him, they picked up his belongings and drove back to Wal-Mart, where Ayers-Jones and Jones shopped for swimsuits. Jones testified that, about 24 hours after Good went missing, she called the jail and Ayers-Jones called the hospital to see if they could locate Good. They did

3

not call 911 or tell the authorities that he was missing, where they had left him, or that he was on drugs, behaving erratically, and possibly overdosing and in need of help. Ayers-Jones later went to Jones's mother's house, and said she was "hiding from the law."

Good's body was found on June 15, 2015, in a wooded area in Emanuel County and an autopsy determined that the cause of death was a "lethal dose" of methamphetamine. When law enforcement went in search of Ayers-Jones, seeking to detain her for questioning, they found her hiding under a grill tarp by the swimming pool at a friend's house.

OCGA § 16-5-3 (a) provides that "[a] person commits the offense of involuntary manslaughter in the commission of an unlawful act when [s]he causes the death of another human being without any intention to do so by the commission of *an unlawful act other than a felony*." (Emphasis supplied.) Ayers-Jones argues that the evidence showed only the potential felony of distribution of methamphetamine,

4

of which she was acquitted,[2] and that the State failed to prove that she committed any non-felonious act which caused Good's death.

At trial, the court charged the jury on involuntary manslaughter as a lesser-included offense of felony murder, and on reckless conduct. When the trial court read this portion of the proposed charge on involuntary manslaughter based on reckless conduct to counsel during the charge conference, and stated that it would append the language of the reckless conduct statute to that charge, Ayers-Jones's counsel said, "That looks fine to me." The jury found Ayers-Jones guilty of involuntary manslaughter, predicated on reckless conduct, as a lesser-included offense of the felony murder with which she was charged.

OCGA § 16-5-60 (b) provides that:

_____

[2] See *Hood v. State*, 303 Ga. 420, 428 (3) (811 SE2d 392) (2018) (jury instruction on involuntary manslaughter based on reckless conduct as a lesser-included offense to felony murder charges was not warranted, because all of defendant's acts, including possession of cocaine with intent to distribute, aggravated assault, and possession of a firearm as a convicted felon were, in themselves, felonies, whereas reckless conduct is a misdemeanor). See also *Arnett v. State*, 245 Ga. 470, 472-473 (3) (265 SE2d 771) (1980) (finding no error in charge on involuntary manslaughter where there was "slight evidence" warranting the charge, as such evidence presents a jury question).

> A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that [her] act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

See also *Riley v. State*, 250 Ga. App. 427, 429 (2) (551 SE2d 833) (2003) (The crime of reckless conduct is essentially "an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another") (citation and punctuation omitted).

As the evidence outlined above showed, Ayers-Jones was involved in loading capsules with methamphetamine, one of which she knew contained more of the drug than the others. In a recorded interview with police, which was played for the jury, Ayers-Jones talked about how she felt after she took her own capsule, saying, "I'm almost 40 years old. I've done a lot of drugs, you know, in my lifetime.. . . [T]hat's the first time in my life that I have been scared. You know, I was really scared. My heart was beating really, really fast. . . . I felt like my eyes was going, you know. . . . Barely could drive. You know, I was sweating profusely." She also said, "[I]f ya'll

think that I killed the boy, please, just give me a lie detect[or test] – I wouldn't ever harm anybody, nobody but myself."

Ayers-Jones also told police about Good's strange behavior. She said he was chanting about the Bible or prayers, talking about how his mother beat him, complaining of being very hot, rocking back and forth, "going into fits" and saying he needed to "kill the demons." Ayers-Jones said she asked if he needed to go to a doctor or hospital, told him he would be all right, and that "it's probably that capsule" and he should "just calm down, relax."

A reasonable jury could have found that Ayers-Jones was criminally reckless. The evidence authorized a finding that Ayers-Jones prepared a capsule loaded with extra methamphetamine, even though her statements to police indicated that she did not intend for Good to be injured or killed by it. See *Reinhardt v. State*, 263 Ga. 113, 113, 114 (2) (428 SE2d 333) (1993), overruled on other grounds by *Vergara v. State*, 283 Ga. 175, 177-178 (1) (657 SE2d 863) (2008), (trial court's failure to charge on involuntary manslaughter and reckless conduct was error where there was evidence that defendant intentionally set fire to his motel room, but there also was evidence

7

from which the jury could conclude that he set the fire without intending to burn down the motel).

Ayers-Jones's testimony also showed that, despite her recognition of the frightening and unusually powerful nature of both her and Good's reaction to the drugs, and his potential need for medical attention, she failed to call for medical aid or contact law enforcement after Good disappeared. A reasonable jury could find that, although Ayers-Jones did not intend for Good to die, in letting him take an overloaded capsule of methamphetamine and in failing to call for help when she knew he was in drug-induced distress, she "consciously disregarded the substantial and unjustifiable risk that he might [die] – and that that disregard constituted a gross deviation from the standard of care a reasonable person would exercise in the situation." (Citation omitted.) *Cowan v. State*, 218 Ga. App. 422, 422 (461 SE2d 587) (1995) (finding reckless conduct where defendant drove on the wrong side of the road, so close to where county employees were working in a ditch that one of defendant's vehicle's side mirrors struck a worker's arm, seriously injuring him). See also *Collins v. State*, 283 Ga. App. 188, 189-190 (1), 192 (1) (b) (641 SE2d 208) (2007) (evidence sufficient to support a reckless conduct conviction where defendant twisted victim's head all the way around and slammed it toward car floorboard,

breaking her neck, refused to take victim to hospital or to call her mother, and fled from law enforcement).

The State also presented evidence from the physician, who also was a forensic pathologist, who performed the autopsy on Good and who was qualified as an expert without objection. He testified that Good died from methamphetamine intoxication. He also testified that even when a person has taken a lethal dose of methamphetamine, as Good did, he "might well be saved" if he received prompt, competent medical attention, particularly if medical personnel were informed as to which drug had been ingested and when. A reasonable jury could find that Ayers-Jones's acts and omissions were the proximate causes of Good's death. *State v. Jackson*, 287 Ga. 646, 650-651 (2) (697 SE2d 757) (2010); *Skaggs v. State*, 278 Ga. 19, 19-20 (1) (596 SE2d 159) (2004). See generally *Early v. State*, 170 Ga. App. 158, 158-159, 163-164 (6) (316 SE2d 527) (1984) (upholding conviction for involuntary manslaughter, even where evidence showed victim's lupus contributed to fatal kidney infection, where medical experts testified that physical injuries defendant inflicted on victim and the resulting infection, along with prolonged neglect because defendant left victim lying in a bathtub for days before taking her to the hospital, directly and

9

materially contributed to her death). The evidence was sufficient to sustain Ayers-Jones's conviction.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*