**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 2, 2022**

# In the Court of Appeals of Georgia

A22A1727. RIDER v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Craig Stephen Rider was convicted of multiple sex and drug-related offenses, and the trial court denied his motion for new trial. On appeal, Rider contends that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion for new trial on the general grounds. Rider further argues that the trial court erred by denying his motion to suppress and allowing the State to introduce evidence of pornography seized from his residence; by excluding the live testimony of two witnesses and instead admitting only their recorded interviews; by denying his motion for new trial based on newly discovered evidence; and by not charging the jury on the lesser included offenses of enticing a

child for indecent purposes and solicitation of sodomy. For the reasons discussed more fully below, we affirm.

Construed in the light most favorable to the verdict,[1] the evidence showed that three children who were siblings – A. H., E. H., and D. H. – were sexually abused by Rider at his residence in Gordon County. The children's parents were friends with Rider, who also was the mother's drug dealer. The children were repeatedly left alone with Rider at his house, where Rider abused each of them separately and on different occasions in his bedroom.

Rider first sexually abused the youngest child, A. H., when he was around seven years old. While alone with A. H. in his bedroom, Rider told A. H. to pull down his pants or Rider would hurt his mother. When A. H. refused, Rider struck A. H., pulled down A. H.'s pants, held A. H. down on the bed, and forced his penis into A. H.'s anus. While he held A. H. down on the bed and anally sodomized him, Rider played pornography on his computer. Afterwards, Rider touched A. H.'s penis and then told A. H. to leave the bedroom. Rider touched A. H.'s penis when they were in Rider's bedroom on other occasions as well. A. H. also saw pornographic movies

---

[1] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

playing in Rider's bedroom multiple times. According to A. H., Rider had a blacklight in his bedroom. Additionally, A. H. observed smoking pipes, a metal spoon, and drugs in Rider's bedroom and saw Rider use the pipe with his mother.

Rider sexually abused the middle child, E. H., when she was around ten years old by touching her on her breasts. Rider touched E. H.'s breasts on other occasions when he was alone with her in his bedroom. Rider also repeatedly showed E. H. pornography when they were in his bedroom, and she saw drugs in his house.

Rider first sexually abused the oldest child, D. H., when he was around 11 years old. D. H. went with Rider into his bedroom, where Rider told D. H. to take off his pants and touch Rider. D. H. refused and began to scream, but Rider pulled off D. H.'s pants, bent D. H. over the bed, and forced his penis into D. H.'s anus. Rider threatened to kill D. H.'s mother if D. H. told anyone what happened. After that incident, Rider anally sodomized D. H. on multiple occasions when they were alone in his bedroom. Rider also repeatedly showed D. H. pornographic movies and magazines. Like his younger brother, D. H. observed that Rider had a blacklight in his bedroom, and he saw that Rider had a blanket over the window there and kept pornographic movies in a box and his pornographic magazines in a crate. D. H. also

3

saw a "meth pipe" in Rider's house, observed Rider smoking from pipes, and was aware that Rider used drugs.

The children's father died of a drug overdose in December of 2010, and the children were placed in foster care in June 2011. Shortly thereafter, the children's mother also died of a drug overdose. The children subsequently disclosed to their foster mother that Rider had sexually abused them and shown them pornography. A. H. also told the foster mother that his older brother D. H. had raped him, and D. H. told the foster mother that he raped A. H. because Rider had done it to him.

The foster mother contacted the Department of Family and Children Services and later filed a police report. Separate recorded forensic interviews were conducted with each of the children in August 2011 and again in November 2013. The children gave more detailed disclosures in their second forensic interviews.

Investigators conducted two interviews with Rider that were audio recorded. In the first interview, which was conducted at the sheriff's office by the lead investigator, Rider claimed that the children always stayed outside when their mother went inside his house and that they had never been in his bedroom or alone with him. Rider also denied using drugs. However, in his second interview, which was conducted at Rider's house by the lead investigator and her partner, Rider

4

acknowledged that the children had been inside his house, but he claimed that they went inside on only one occasion and sat with their mother in his living room and watched television. Rider admitted that he had pornographic materials in his bedroom but maintained that the children could not have seen the materials because he always kept the door to his bedroom shut and the children never wandered inside his house.

While conducting their second interview of Rider, the investigators smelled a strong odor of burnt marijuana inside his house. The investigators, who were interviewing Rider near his front door, also observed that one of the bedroom doors was open, and they saw a blacklight over the bed and a sheet covering the window, consistent with the descriptions of the bedroom that had been provided by the children.

Following the second interview, one of the investigators submitted an application for a search warrant of Rider's house, averring in his affidavit that there was probable cause to believe that there was evidence inside the residence of violations of the Georgia Controlled Substances Act and the crime of aggravated sodomy. A magistrate judge issued the requested search warrant. During the subsequent search of Rider's house, the police took photographs of Rider's bedroom, including the blacklight and covering over the window, and they seized from his

5

bedroom, among other things, boxes of pornographic movies, pornographic magazines, laptops, a jar containing marijuana, a partially burnt marijuana cigarette, and several devices commonly used to smoke marijuana or methamphetamine.[2] The seized pornographic movies and magazines were consistent with what the children said they had seen in Rider's bedroom and that Rider had shown to them. The suspected marijuana seized from the bedroom was tested and confirmed to be marijuana weighing less than an ounce.

Rider was arrested and indicted on several counts of aggravated sodomy, in addition to other sex and drug-related offenses.[3] Rider filed a motion to suppress the pornography seized from his house, and the trial court conducted a hearing and denied the motion. Before trial, Rider also filed a "Hearsay Rule Exception Request – Unavailable Witnesses," asserting that two witnesses (a woman who was Rider's neighbor and sometimes watched the three children, and a man who was Rider's friend) were unavailable to testify and requesting that hearsay statements made by

---

[2] It is undisputed that the pornography seized from Rider's house was legal, adult pornography.

[3] Rider was jointly indicted with another individual who was charged with one drug possession count. The status of the criminal case against the other individual is unclear from the record and is not material to this appeal.

them be deemed admissible at trial (the "Unavailable Witnesses Request"). The trial court addressed the matter in a pre-trial hearing and granted Rider's Unavailable Witnesses Request.

At the ensuing jury trial, the three children testified to events as summarized above,[4] and the children's foster mother (who was by then their adoptive mother) testified about the children's disclosures to her. The November 2013 forensic interviews of the children and the two audio-recorded police interviews with Rider also were played for the jury. Among other additional witnesses called by the State, the investigators testified about their interviews with Rider and the search of his residence, and the State also introduced into evidence photographs of items discovered in Rider's bedroom during the execution of the search warrant, which included photographs of the marijuana and smoking devices, of the blacklight and sheet over the window, and of the pornographic movies and magazines.

The audio-recorded police interviews of the two witnesses referred to in Rider's Unavailable Witnesses Request were played for the jury. Additionally, Rider elected to testify, denying that he ever was alone with the children or had sexually

---

[4] At the time of trial, A. H. was 13 years old, E. H. was 15 years old, and D. H. was 18 years old.

abused them. Rider acknowledged that the marijuana cigarette seized from his bedroom belonged to him and that he smoked marijuana using the smoking devices found in his bedroom, and he admitted that the blacklight and pornographic materials were owned by him. Rider, however, testified that he did not know how the children learned about the pornography in his bedroom. A licensed educational psychologist who reviewed the children's forensic interviews and other documents in the case also testified in favor of the defense.

The jury found Rider guilty of two counts of aggravated sodomy, two counts of aggravated child molestation, four counts of child molestation, one count of sexual battery as a lesser included offense of child molestation, one count of possession of less than an ounce of marijuana, and one count of possession of drug-related objects.[5] After his conviction and sentence, Rider filed a motion for new trial in which he raised the issues addressed in this appeal. The trial court conducted a hearing and denied the motion, and this appeal followed.

---

[5] The jury acquitted Rider of two counts of aggravated sodomy, one count of aggravated child molestation, and two counts of child molestation. The trial court directed a verdict of acquittal on one count of child molestation.

1. Rider contends that the evidence was insufficient to support his convictions for aggravated sodomy, child molestation, and sexual battery.[6] We disagree.

> When a defendant challenges the sufficiency of the evidence to support his criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

---

[6] While Rider challenges the sufficiency of the evidence to support all of his sex-related convictions, his challenge to his aggravated child molestation convictions is moot because his convictions on those counts were merged for sentencing with his aggravated sodomy convictions, and he was sentenced only on the latter convictions. See *Herring v. State*, 363 Ga. App. 686, 689 (2) (872 SE2d 459) (2022). See also *Rosser v. State*, 308 Ga. 597, 599 (1) (842 SE2d 821) (2020) (concluding that challenges to the sufficiency of evidence on certain counts were moot because "those counts were either vacated by operation of law or merged for sentencing"). Additionally, in challenging the sufficiency of the evidence, Rider focuses solely on his sex-related convictions and does not address the sufficiency of the evidence as to his drug-related convictions. Rider therefore has abandoned any challenge to his drug-related convictions on sufficiency grounds. See Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Carr v. State*, 363 Ga. App. 35, 36-38 (1) (870 SE2d 531) (2022) (concluding that the defendant abandoned his challenge to the sufficiency of the evidence by failing to provide any pertinent legal or factual analysis); *Jones v. State*, 289 Ga. App. 219, 221 (1), n.1 (656 SE2d 556) (2008) (concluding that the defendant abandoned his challenge to the sufficiency of the evidence as to counts for which he provided no argument or citation to legal authority).

(Citation and punctuation omitted.) *Priddy v. State*, 362 Ga. App. 434, 434-435 (1) (868 SE2d 831) (2022).

Guided by these principles, we conclude that the evidence presented at trial and summarized above was sufficient to entitle a rational jury to find Rider guilty beyond a reasonable doubt of the aforementioned sexual offenses. See *Jackson*, 443 U.S. at 319 (III) (B). The testimony of the three child victims, standing alone, was sufficient to support Rider's convictions. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. . . ."); *Priddy*, 362 Ga. App. at 436 (1) (concluding that the victim's testimony alone was sufficient to sustain the defendant's sex-related convictions, including for aggravated sodomy, child molestation, and sexual battery). "Physical evidence of the sexual abuse was not required." *Torres v. State*, 353 Ga. App. 470, 476 (1) (838 SE2d 137) (2020). The jury also was permitted to consider the out-of-court statements made by the children in their forensic interviews and to their foster (now adoptive) mother as substantive evidence of Rider's guilt. See OCGA § 24-8-820 (child hearsay statute); *Ramirez v. State*, 345 Ga. App. 611, 614 (1) (814 SE2d 751) (2018). "And, although [Rider] testified and denied the [children's] accusations, the jury was under no obligation to believe him." *Green v. State*, 358 Ga. App. 843, 846 (1) (856 SE2d 427) (2021). The

10

evidence therefore was sufficient to sustain Rider's convictions. See *Priddy*, 362 Ga. App. at 436-437 (1). See also OCGA §§ 16-6-2 (a) (2) (defining ''aggravated sodomy''); 16-6-4 (a) (defining ''child molestation''); 16-6-22.1 (b) (defining ''sexual battery'').

Nevertheless, Rider maintains that the evidence was insufficient because he was acquitted of several sex-related offenses.[7] But, generally, "[a]n acquittal on one charge does not affect the sufficiency of the evidence as to another charge." (Citation and punctuation omitted.) *Allen v. State*, 361 Ga. App. 300, 303 (1) (864 SE2d 149) (2021). And while Rider further contends that the evidence was insufficient because of conflicts between the statements of the children in their forensic interviews and their trial testimony, "it was for the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted.) *Green*, 358 Ga. App. at 846 (1). See *Westbrooks v. State*, 309 Ga. App. 398, 400-401 (1) (710 SE2d 594) (2011) (explaining that "conflicts between the victim's testimony at trial and the victim's out-of-court statements were for the jury to

---

[7] See supra footnote 5.

11

resolve") (citation and punctuation omitted). Accordingly, Rider's arguments regarding the sufficiency of the evidence lack merit.

2. In two related enumerations of error, Rider contends that the trial court erred in denying his motion for new trial on the general grounds. Again, we disagree.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a broad discretion to sit as a thirteenth juror. In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.

(Citations and punctuation omitted.) *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013).

Here, in its order addressing Rider's motion for new trial, the trial court applied the proper standard under OCGA §§ 5-5-20 and 5-5-21 and exercised its discretion to deny the motion. "To the extent [Rider] asks this Court to review the merits of the trial court's exercise of its discretion as the thirteenth juror, we decline to do so; this

Court does not sit as an arbiter of the general grounds, which are solely within the discretion of the trial court." *Wright v. State*, __ Ga. App. __, __ (2), No. A22A1339, 2022 Ga. App. LEXIS 449, at * 18 (2) (Sept. 22, 2022), quoting *Wilson v. State*, 302 Ga. 106, 109 (II) (d) (805 SE2d 98) (2017). Consequently, Rider has failed to show a valid ground for reversal.

3. Rider argues that the trial court erred in denying his motion to suppress the pornography seized from his bedroom and in allowing the State to introduce evidence at trial that he possessed such pornography.

(a) Relying solely upon *Simpson v. State*, 271 Ga. 772 (523 SE2d 320) (1999), Rider argues that the seizure of legal adult pornography from his bedroom in connection with the execution of the search warrant was improper and that the trial court thus should have granted his motion to suppress. *Simpson*, however, addressed the admissibility of sexually explicit material at trial under the rules of evidence, not whether such material can be lawfully and constitutionally seized by the police when executing a search warrant. See *Simpson*, 271 Ga. at 773-774 (1). Rider does not cite to any legal authority addressing motions to suppress, search warrants, or the seizure of pornography; provides no discussion or analysis of the legal principles applicable in those contexts; and does not apply the facts of this case to that body of decisional

13

law. "It is the appellant's burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal." (Citation and punctuation omitted.) *Kelly v. State*, 364 Ga. App. 556, 564 (4) (874 SE2d 442) (2022). Rider has failed to satisfy his burden of showing error in the trial court's denial of his motion to suppress.

(b) Rider contends that the trial court should have granted him a new trial because the court erred in allowing the State to introduce evidence of the pornography found in his bedroom. Rider relies on the following evidentiary rule enunciated in *Simpson*:

> In a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

271 Ga. at 774 (1). Rider argues that evidence of the pornography was inadmissible under the rule set out in *Simpson* and was unfairly prejudicial.

As an initial matter, Rider's reliance on the evidentiary rule enunciated in *Simpson* is misplaced. *Simpson* was decided long before the enactment of Georgia's

14

new Evidence Code and relied on general principles pertaining to relevance, character evidence, and prejudice – "considerations that are now specifically controlled by the new Evidence Code." *Venturino v. State*, 306 Ga. 391, 395 (2) (b) (830 SE2d 110) (2019). See OCGA §§ 24-4-401; 24-4-402; 24-4-403; 24-4-404. Because Rider was tried in August 2015, Georgia's new Evidence Code applies in this case. See *Olds v. State*, 299 Ga. 65, 69 (2), n. 5 (786 SE2d 633) (2016). See Ga. L. 2011, p. 214, § 101 (new Evidence Code "shall become effective on January 1, 2013, and shall apply to any . . . trial commenced on or after such date"). And given that the aforementioned rules in Georgia's new Evidence Code are modeled after the Federal Rules of Evidence, we no longer apply cases decided under the old Evidence Code; "we instead rely on [Georgia appellate] cases decided under the new Evidence Code, and also look to federal case law for guidance." *Venturino*, 306 Ga. at 396 (2) (b). See *State v. Orr*, 305 Ga. 729, 736 (3) (827 SE2d 892) (2019) ("Where rules in the new Evidence Code are materially identical to Federal Rules of Evidence, we look to federal appellate law . . . to interpret them, instead of following our own precedent issued under the old Evidence Code."); *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018) (concluding that if a rule under the new Evidence Code "materially mirrors" a Federal Rule of Evidence, "we look to federal appellate precedent until a

15

Georgia appellate court decides the issue under the new Code"). See also *Venturino*, 306 Ga. at 395-396 (2) (b) (noting that OCGA §§ 24-4-401, 24-4-402, and 24-4-403 are modeled after the Federal Rules of Evidence); *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016) (noting that OCGA § 24-4-404 (b) is modeled after the Federal Rules of Evidence). The *Simpson* rule thus is inapposite.

Under our new Evidence Code, the general admissibility of videos and photographs

> is governed by OCGA § 24-4-401 ("Rule 401"), which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"; OCGA § 24-4-402 ("Rule 402"), which provides that "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules"; and OCGA § 24-4-403 ("Rule 403"), which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Decisions regarding relevance are committed to the sound discretion of the trial court, and the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly.

16

(Citations and punctuation omitted.) *Venturino*, 306 Ga. at 394-395 (2) (b). See

*Robinson v. State*, 308 Ga. 543, 549 (2) (b) (842 SE2d 54) (2020). Accordingly, to

be admissible at trial, the pornographic videos and magazines found in Rider's

bedroom had to be relevant and probative, and the probative value of the materials

could not be substantially outweighed by any unfair prejudice. See id.

Applying these principles, we conclude that the trial court acted within its

discretion in allowing the State to introduce evidence of the pornography found in

Rider's bedroom. Evidence of the pornographic movies and magazines was relevant

and highly probative because it corroborated the children's claims that Rider had such

movies and magazines in his bedroom and showed those materials to them. See

*Robinson v. State*, 308 Ga. at 550 (2) (b) (ii) (concluding that video was relevant and

probative because it corroborated witness testimony about the crime scene); *Bentley*

*v. State*, 307 Ga. 1, 5 (2) (a) (834 SE2d 549) (2019) (holding that photograph was

relevant and probative because it corroborated several eyewitnesses' accounts of the

crime). Furthermore, given that Rider was specifically charged with several counts

of child molestation based on allegations that he showed the children images of adult

pornography, evidence of the pornography found in his bedroom was relevant and

carried significant probative weight because it assisted the State in proving those

allegations. See *Holzheuser v. State*, 351 Ga. App. 286, 290-291 (1) (a) (ii) (828 SE2d 664) (2019) (concluding that images of child pornography found on the defendant's phone were relevant and probative because the images assisted the State in proving an element of the charged offense of child molestation, namely, that the defendant intended to expose himself for the purpose of sexual gratification). Additionally, we note that only a few photographs of the seized pornographic movies and magazines were introduced into evidence; the movies and magazines were not themselves admitted into evidence and played or shown to the jury.

Under these circumstances, the trial court was authorized to find that evidence of the pornographic movies and magazines found in Rider's bedroom was relevant and probative under Rule 401,[8] and that the probative value of the pornography was

---

[8] To the extent that Rider further claims that evidence of his possession of pornographic materials should have been excluded because it constituted inadmissable character evidence, his claim is unpersuasive. Under OCGA § 24-4-404 (b) ("Rule 404"), other-acts evidence is not admissible "to prove the character of a person in order to show action in conformity therewith." But

> Rule 404 (b) is not applicable to "intrinsic" evidence. Intrinsic evidence is evidence that arises from the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense. Evidence may be intrinsic if it pertains to the chain of events explaining the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime. Intrinsic evidence remains

18

not substantially outweighed by the danger of unfair prejudice under Rule 403. See

*United States v. Kelley*, 861 F3d 790, 798-799 (II) (B) (8th Cir. 2017) (concluding in

a child pornography case that admission of evidence of the defendant's use of adult

pornography did not violate Federal Rule of Evidence 403, where the evidence linked

the defendant to the computer containing child pornography and the program used for

downloading that pornography, and thus connected him to the charged crimes);

*United States v. Caldwell*, 586 F3d 338, 346 (II) (5th Cir. 2009) (holding that the

admission of evidence of the defendant's possession of adult pornography did not

violate Federal Rule of Evidence 403, where the evidence had "probative value as an

integral part of the charged offense"); *Holzheuser*, 351 Ga. App. at 291-292 (1) (a)

(iii) & n. 24 (concluding that admission of evidence of child pornography on the

defendant's phone did not violate Rule 403; noting that the images at issue were not

"inflammatory material that [had] no bearing on the issues at trial," and further noting

admissible even if it incidentally places the defendant's character at issue[.]
(Citations and punctuation omitted.) *Harris v. State*, 314 Ga. 238, 264 (3) (a) (875 SE2d 659) (2022). Here, for the reasons previously discussed in this division of our opinion, the evidence of Rider's possession of pornography was "inextricably intertwined with the evidence regarding the charged offense[s]" and "form[ed] an integral and natural part of an account of the crime[s]." Id. The evidence thus was admissible even if it incidentally placed Rider's character in issue. See id.

19

that "[p]hotographs are inherently more persuasive regarding the existence of the things they depict than testimony regarding those same things") (citation and punctuation omitted). The trial court therefore did not err in admitting the pornographic materials at trial and in denying Rider's motion for new trial on the asserted ground.

4. Rider also claims that the trial court erred by "not allowing the jury to hear the live testimony of [two witnesses, his neighbor and friend,]" and maintains that their "live in-person testimony . . . should not have been excluded." Rider appears to argue that by allegedly excluding the two witnesses's live testimony and instead allowing only their recorded police interviews to be played to the jury, the trial court violated his constitutional rights of confrontation and to compulsory process.

Rider's argument, however, is based on a mischaracterization of the record, which reflects that the trial court did not "exclude" the live testimony of Rider's neighbor and his friend. Rather, the trial court granted *Rider's* Unavailable Witness Request in which Rider represented that the two witnesses were unavailable to testify at trial and asked that their hearsay statements be admitted under OCGA § 24-8-804. Consequently, to the extent that there was any alleged error committed by the trial court in admitting recorded statements of the two witnesses in lieu of their live in-

person testimony, the error was induced by Rider, and he will not be heard to complain about the alleged error on appeal. See *Butler v. State*, 363 Ga. App. 753, 765 (8) (871 SE2d 902) (2022) ("Induced error does not furnish a basis for appeal.") (citation and punctuation omitted); *Zerbarini v. State*, 359 Ga. App. 153, 165 (3) (a) (855 SE2d 87) (2021) ("A party will not be heard to complain of error induced by his own conduct.") (citation and punctuation omitted).

In any event, "[i]t is fundamental that harm as well as error must be shown for reversal." (Citation and punctuation omitted.) *Harris v. State*, 313 Ga. 653, 662 (4) (a) (872 SE2d 732) (2022). At the hearing on his motion for new trial, Rider did not proffer the testimony of the first witness (his neighbor), and he acknowledged that the live testimony of the second witness (his friend) would not have been different from the friend's recorded interview admitted at trial. Rider therefore has failed to show that he was harmed by the admission of the two witnesses' recorded interviews in lieu of their live testimony, and thus he has failed to show that he was entitled to a new trial on the enumerated ground. See *Neuman v. State*, 311 Ga. 83, 92 (4) (a) (i) (856 SE2d 289) (2021) (concluding that the exclusion of testimony was harmless, where the testimony was duplicative of other evidence admitted at trial); *Riley v. State*, 250 Ga. App. 427, 429 (3) (551 SE2d 833) (2001) (noting that where the defendant fails

21

to make a proffer of the absent witness's testimony, this Court "cannot gauge any possible harm").

5. Rider also argues that the trial court erred by denying his motion for new trial based on newly discovered evidence. At the hearing on his motion for new trial, Rider presented the testimony of an inmate convicted of child molestation who had been incarcerated with Rider. According to Rider, the inmate's testimony constituted newly discovered evidence that supported the granting of a new trial. We do not agree.

> To obtain a new trial under OCGA § 5-5-23[9] based on newly discovered evidence, a defendant must show: first, that the evidence came to his knowledge after his trial; second, that the failure to discover the evidence sooner was not due to his lack of due diligence; third, that the evidence is so material that it would probably produce a different verdict; fourth, that the evidence is admissible and not cumulative only; fifth, an affidavit of the witness or an explanation for its absence; and

---

[9] OCGA § 5-5-23 provides:
> A new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

22

sixth, that the effect of the evidence would be more than to impeach the witness's credibility. A defendant fails to meet his burden if he cannot satisfy one of these requirements, and a trial court's ruling on such a motion will not be reversed unless it affirmatively appears that the court abused its discretion.

(Citations and punctuation omitted.) *Williams v. State*, 312 Ga. 195, 196 (862 SE2d 108) (2021). See *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

We discern no abuse of discretion by the trial court. At the hearing on Rider's motion for new trial, the sum total of the inmate's testimony was that he was convicted of child molestation and is currently serving his sentence in prison; that he was "locked up" with Rider for a period of time and had some conversations with him, "[m]ostly, about God"; that he met D. H. once when his own children were in foster care; that he did not know A. H.; and that he did not know the biological mother of the child victims in this case. After this abbreviated testimony from the inmate, Rider's counsel told the court that there was "just no point" in questioning the inmate any further and ended his examination. Clearly, the inmate's testimony was not so material that it probably would have produced a different verdict, and the trial court therefore acted within its discretion in concluding that Rider was not entitled

23

to a new trial based on newly discovered evidence.[10] See *Williams*, 312 Ga. at 197. See also *Benn v. State*, 244 Ga. App. 67, 70 (2) (535 SE2d 28) (2000) (concluding that the trial court was authorized to determine that testimony proffered by the defendant at the new trial hearing did not constitute newly discovered evidence, where the testimony was not so material that it would probably result in a different verdict).

6. Lastly, Rider argues that the trial court erred by failing to charge the jury on the lesser included offenses of enticing a child for indecent purposes (OCGA § 16-6-5) and solicitation of sodomy (OCGA § 16-6-15). However, Rider's brief simply contains a few citations to basic legal principles followed by an assertion that the offenses of enticing a child for indecent purposes and solicitation of sodomy were lesser included offenses in this case. Rider does not discuss how charges on the alleged lesser included offenses were supported by the evidence and provides no

---

[10] Rider contends that the trial court erred in ruling that he abandoned his claim of newly discovered evidence when he abruptly ended his examination of the inmate at the new trial hearing. Pretermitting whether Rider abandoned his claim, we note that in its order denying Rider's motion for new trial, the trial court also denied Rider's claim on its merits, determining that "the information elicited from [the inmate] is not newly discovered evidence such as would support the granting of a new trial." The trial court did not err in that determination on the merits for the reasons discussed above, and the denial of a motion for new trial will be affirmed if right for any reason. See *Pierce v. State*, 286 Ga. 194, 199 (4) (686 SE2d 656) (2009).

citations to the record to support his argument. "But, mere conclusory statements are not the type of meaningful argument contemplated by our rules." (Citations and punctuation omitted.) *Bowman v. State*, 358 Ga. App. 612, 615 (2) (856 SE2d 11) (2021). "[L]egal analysis . . . is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." (Citation and punctuation omitted.) *Swain v. State*, 268 Ga. App. 135, 136 (1) (601 SE2d 491) (2004). Because Rider provides no citations to the record or meaningful legal argument, we deem his claim of error abandoned. See Court of Appeals Rule 25 (d) (1); *Bowman*, 358 Ga. App. at 615-616 (2). See also *Brown v. State*, 275 Ga. App. 99, 106 (4) (c) (619 SE2d 789) (2005) (concluding that defendant abandoned argument regarding charge on lesser included offense, where the defendant "failed to specify how such a charge was supported by the evidence"); *Lewis v. State*, 245 Ga. App. 234, 236 (3) (a) (537 SE2d 111) (2000) (concluding that defendant abandoned argument that charge on lesser included offense should have been given by the trial court, where the defendant's argument consisted of a conclusory assertion without providing any factual or legal support).

*Judgment affirmed. Brown and Hodges, JJ., concur.*

25